**Edward T. WELLS, Plaintiff-Appellant,**

v.

**Boyd WARD et al., Defendants-Appellees.**

**No. 72–1413.**

United States Court of Appeals, Tenth Circuit.

Dec. 27, 1972.

Edward T. Wells, Salt Lake City, Utah, for plaintiff-appellant.

Harold G. Christensen of Worsley, Snow & Christensen, Salt Lake City, Utah, for defendants-appellees.

Before HILL, HOLLOWAY and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

Plaintiff-appellant seeks a reversal of the judgment of the district court based on the granting of defendants-appellees' motion for summary judgment on behalf of the numerous named defendants. The basic allegation of the complaint is that appellant was falsely and illegally arrested and imprisoned because of his failure to sign a traffic ticket issued for alleged illegal parking.

Plaintiff's theory is that he was taken into custody following the issuance of the ticket because of his refusal to sign the parking ticket and that subsequently the Justice of the Peace and the jailer refused to accept his bail bond credit card and required that a bondsman make

the $25.00 bond. He seeks a judgment against the University of Utah, the Justice of the Peace, jailer, Sheriff, the arresting officers and their superiors.

The facts are not seriously disputed. On the evening of August 24, 1970, appellant, a law student who appears as his own attorney on this appeal, was arrested after he parked his car in a no parking zone in front of the law school. He had gone into the building to check on a grade and came back a few minutes later to find that a University of Utah police patrol car was parked in back of his car with its red light flashing. Appellant nevertheless proceeded to get into his car and attempted to drive away when one of the officers asked him to get out and not to move the car. The officer examined appellant's driver's license and wrote out a ticket. He then presented the ticket to appellant requesting him to sign it. Appellant refused to sign the ticket and to thereby promise to appear. He refused, notwithstanding that he was told that if he did not sign he would be taken into custody. Following his refusal he was taken into custody. He was handcuffed and while handcuffed he threw the keys to an acquaintance who then proceeded to get into the car as if to move it. This the officers prevented. They subsequently impounded the car resulting in the defendant having to pay a fee of $10.00.[1]

The Justice of the Peace Court to which the appellant was taken was that of the defendant Child and was some 10 miles from the scene. Some complaint was made that this was not the nearest justice of the peace, but in this context at least the distance factor is unimportant. The presentation was made to Justice of the Peace Child, and he charged the appellant with illegal parking and fixed the bond in the amount of $25.00.

Appellant had an American Automobile Association bond card, but the judge would not accept this as security and complaint is made on this account also.

From the jail he called the local president of AAA and subsequently a bondsman was located. Meanwhile, he was placed in a cell and kept there for some period in excess of an hour.

The procedure requiring the signing of the ticket as a promise to appear is provided by ordinance and statute. During the time that the ticket was being prepared in front of the law school, the officers confirmed the appellant's ownership of the vehicle.

The district court conducted an extensive hearing on motion for summary judgment. After considering the interrogatories and the other papers which were part of the file, the appellees' motion for summary judgment was granted as to each of the defendants.

In essence the appellant contends here that it was error to grant the motion for summary judgment because the officers did not actually see, according to his argument, the parking of the vehicle and, therefore, there was not an offense committed in their presence. The University of Utah, it is argued, is guilty for having failed to properly instruct the arresting officers, whereby they would have avoided this type of incident. The judge, so it is argued, acted outside of his authority and, therefore, is not entitled to any immunity. The supervisors, it is contended, are also guilty for having failed to properly instruct the subordinate officers who made the arrest.

As noted, liability is sought against the Justice of the Peace because of his refusal to allow appellant to be released from custody on the Utah Auto Club bond card. Similarly, this is the charge against the officers at the jail.

Section 41–6–166, 167 of the Utah Statutes Annot. provides that where a person is arrested for violation of a misdemeanor, including illegal parking, he shall be taken before a magistrate (nearest and most accessible to the place where the arrest was made) if he refuses to give a satisfactory promise that he will appear.

---

1. He does not, however, allege any infringement on account of the car.

Section 168, *supra,* also provides for release following appearance before the magistrate, again upon the giving of a promise to appear.

■ Defendant contends that the arrest was illegal per se and that, therefore, he is entitled to redress pursuant to 42 U.S.C. § 1983. His contention would appear to be that violations of an individual's constitutional rights by agents of the state acting under color of law are substantially interchangeable with intentional torts arising under state law. While it is true that the state law with respect to arrest is looked to for guidance as to validity of the arrest since the officers are subject to those local standards, it does not follow that state law governs. On the contrary, the rights claimed arise under the federal law and thus the ultimate standard must be § 1983, the Fourteenth Amendment to the Constitution and federal decisions. See Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) and Stringer v. Dilger, 313 F.2d 536 (10th Cir. 1963).

■ The cases recognize that evaluations of rights and duties under § 1983, *supra,* arising as they do under the Fourteenth Amendment to the Constitution of the United States, are often different from counterpart common law actions which arise under state substantive law. This is not to say that at times the same set of facts will not give rise to remedies under both § 1983 and the state law of torts. The differences are though in terms of not only the requisite elements under § 1983, but also in the gravity of the right which has been invaded. For example, under state common law, the mere placing of another in apprehension of bodily harm is an assault and the mere unprivileged touching of another is a battery. Also, the slightest interference with personal liberty is a false imprisonment. It does not follow that all such invasions however trivial or frivolous serve to activate remedies under the due process clause of the Fourteenth Amendment as well as those parts of the Bill of Rights which are incorporated in and made a part of due process.

In the definitive case of Monroe v. Pape, *supra,* the opinions show that the immediate occasion for the adoption of this legislation was the post Civil War conditions primarily in the southern states. Blacks and Union sympathizers were persecuted by the Klu Klux Klan and they did not receive the protection of state laws and state law enforcement agencies. After citing the comments of various legislators, the opinion of the Court summarized the purposes of this statute:

> The debates were long and extensive. It is abundantly clear that one reason the legislation was passed was to afford a federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies.

365 U.S. at 180, 81 S.Ct. at 480. But the application of the statute was not, of course, limited to any section or group.[2]

2. An Annotation in 1 A.L.R.Fed. 519, 522, summarizes the purpose and requirements of the legislation:

> In enacting the statute, Congress meant to give a remedy to parties deprived of constitutional rights, privileges, and immunities by a state official's abuse of his position. The purposes of the statute were to override certain kinds of state laws, to provide a remedy where state law was inadequate, to provide a federal remedy where a theoretically adequate state remedy was not available in practice, and to provide a remedy in the federal courts supplementary to any remedy any state might have.
>
> The statutory prerequisites to liability of a police officer under 42 USC § 1983 are, first, that he act "under color of" state or local law, and second, that the plaintiff be subjected to a "deprivation of any rights, privileges, or immunities secured by the Constitution and

Not only the history of the legislation but also the nature of the rights which the legislation seeks to uphold serve to distinguish an action under § 1983 from a tort action arising under state law, which latter suit need only merely satisfy the definitions of assault, battery or false imprisonment which are mentioned above. In other words, the Congress in enacting § 1983 had in mind the aggravated lawless conduct which then obtained. No doubt the Act as it is presently administered comprehends a broader range of invasions than was then contemplated, but the violation must still be such as to constitute a deprivation of the rights guaranteed by the Constitution.

Judge Hill made this point in Stringer v. Dilger, 313 F.2d 536 (10th Cir. 1963), wherein it was pointed out that the Civil Rights Act was not enacted in order to discipline local law enforcement officials. He went on to give examples of some of the violations which have been recognized as cognizable under the Act.[3] All of these are aggravated deprivations of personal rights.

In a later opinion which Judge Breitenstein wrote for the court, Freeman v. Flake, 448 F.2d 258 (10th Cir. 1971), the necessity for the invasion to have substance was expressly brought out. It was there said:

The remedy provided by § 1983 is supplementary to any pertinent state

laws." And while it has been held that neither specific intent nor purpose to deprive an individual of his civil rights is a prerequisite to the civil liability of a policeman under Civil Rights Act, 42 USC § 1983, the courts have been careful to point out that there is no purpose to make every state criminal prosecution which ends in an acquittal automatically a violation of the federal civil rights statute; it has been said that there must be something more and that the added elements may well partake substantially of traditional general tort law to bring in elements akin to want of probable cause, or malice, or both. If that is so, then the federal claim may turn at times upon personal motivation and certainly the conduct of the particular officer-defendant as the actor.

The courts have interpreted the civil provisions of the Civil Rights Act so as to make actionable the conduct of arresting officers in unlawfully beating their prisoner, in arresting and detaining him without cause, and in conducting an unauthorized and unwarranted search and seizure.

But not every such police action rises to the dignity of a deprivation of basic civil rights which is necessary to state a claim under 42 USC § 1983, and the existence of probable cause or an honest mistake of law or fact has been successfully interposed as a defense in several cases. * * *

3. The pertinent language is as follows:
Some examples of actions taken under color of state law and held to be depriva-

tions of rights guaranteed by the Constitution and laws of the United States are: (1) Illegal search and seizure, unlawful arrest and detention without a warrant or arraignment by local officers, Monroe v. Pape, supra; (2) illegal arrest and assault without cause resulting in death, Brazier v. Cherry, 5 Cir., 293 F.2d 401, cert. denied, 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136; (3) illegal arrest and seizure, refusal to permit consultation with an attorney, physical abuse, incarceration in jail and refusal to inform the person as to what crime she was charged with committing, Davis v. Turner, 5 Cir., 197 F.2d 847; (4) apprehension by local officers of an individual who was badly beaten, intimidated and imprisoned by them without ever being taken before a committing magistrate or tribunal which would afford him due process of law, Koehler v. United States, 5 Cir., 189 F.2d 711, cert. denied, 342 U.S. 852, 72 S.Ct. 75, 96 L.Ed. 643 (Criminal prosecution under criminal civil rights statutes); (5) the use of threats, intimidation and questioning to force an individual accused of crime to change his plea of not guilty to guilty, Lewis v. Brautigam, 5 Cir., 227 F.2d 124, 55 A.L.R.2d 505; and (6) unlawful arrest and detention without preferring charges and providing urgently needed medical attention, Coleman v. Johnston, 7 Cir., 247 F.2d 273. 313 F.2d at 541.

remedy. See Monroe v. Pape, 365 U. S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492. The proliferation of litigation resulting from the expanded use of § 1983 is apparent to anyone familiar with the reported decisions of the courts of the United States. The existence of the § 1983 remedy does not require that federal courts entertain all suits in which unconstitutional deprivations are asserted. A federal constitutional question must exist "not in mere form, but in substance, and not in mere assertion, but in essence and effect." Cuyahoga River Power Co. v. Northern Ohio Traction & Light Co., 252 U.S. 388, 397, 40 S.Ct. 404, 408, 64 L.Ed. 626.

448 F.2d at 261. See also Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968), where the Supreme Court declared that federal courts cannot intervene in conflicts which are not concerned with basic constitutional values.[4]

In Marland v. Heyse, 315 F.2d 312 (10th Cir. 1963) (opinion by Judge Pickett), there had been three successive arrests without warrants based on complaints that an ice cream vendor was shortchanging purchasers. The trial court had directed a verdict, notwithstanding the three arrests. The court reversed this judgment on the ground that it was open to the jury to conclude that the plaintiff had been deprived of constitutional rights, privileges and immunities. The court said that it was for the jury to determine whether the action of the police was so arbitrary, unreasonable and without probable cause as to subject the plaintiff to a deprivation of rights guaranteed by the Constitution of the United States.

In the Annotation previously referred to (reported in 1 A.L.R.Fed. at 520),

the author comments on a number of cases in which the conduct of the officers was held to have been legally insufficient to constitute deprivations of constitutional rights. See 1 A.L.R.Fed. at 528, and see particularly Daly v. Pedersen, 278 F.Supp. 88 (D.C.Minn.1967), and see Gabbard v. Rose, 359 F.2d 182 (6th Cir. 1966), which was a citizen-police conflict growing out of a traffic offense, wherein it was ruled that the district court was correct in dismissing the cause where the officer was shown to have acted under a mistake of fact. The court said that this was not a deprivation of basic civil rights.

See also Joyce v. Ferrazzi, 323 F.2d 931 (1st Cir. 1963), wherein an arrest was made growing out of a disturbance connected with a family fight. It was concluded that the arrest of the father did not constitute deprivation of any federally secured right, privilege or immunity.

Other examples of alleged invasions which have been regarded by the court as frivolous or trivial and as not being proper civil rights cases are set forth in 1 A.L.R.Fed. at 532, 533.

The crucial factor in the case at bar was the action of the officers in taking the plaintiff into custody, but in the final analysis this incident falls short not only because the officers acted in accordance with local law requiring that a violator be arrested when he fails to sign the ticket, but also because the case is insubstantial.

When an accused, as did the appellant here, freely chooses custody rather than the simple expedient of acknowledging receipt of the ticket and agreeing to appear, it does not add up to an invasion of constitutional rights. If the appellant merely sought vindication of rights, a less drastic and difficult remedy was

---

4. The case of Morgan v. Labiak, 368 F.2d 338 (10th Cir. 1966) (opinion by Judge Hickey), noted in 1 A.L.R.Fed. 515, is illustrative of the aggravated assault and battery which clearly gives rise to a · § 1983 action. The standard which was

there set forth was whether "the force was unnecessary, unreasonable or violent." It was held that the evidence was sufficient to justify submission of the question to the jury.

open to him, that of a tort remedy in state court.[5] He appears to have misconceived the thrust and reach of § 1983.

The judgment of the district court is affirmed.

---

5. We are neither advising nor encouraging appellant to take other or further action.