Evan J. HENRY, Plaintiff,

v.

CITY OF MINNEAPOLIS, a municipal Corporation, Norman Smith, Donald Johnson and Edward C. Vavreck, Sr., Defendants.

Civ. No. 3-80-547.

United States District Court, D. Minnesota, Third Division.

April 18, 1981.

Charles F. Richards, O'Brien, Ehrick, Wolf, Deaner & Downing, Rochester, Minn., for plaintiff.

Robert J. Alfton, City Atty., Jerome F. Fitzgerald, Asst. City Atty., Minneapolis, Minn., for defendants.

## MEMORANDUM & ORDER

DEVITT, Chief Judge.

This matter is before the court upon all defendant's motions to dismiss for lack of subject matter jurisdiction, and in the alternative, upon defendant Vavreck's motion to dismiss or for summary judgment on the ground of absolute immunity. We reach only the motion to dismiss for lack of subject matter jurisdiction. The issue presented is whether, under the circumstances of this case, plaintiff may maintain a cause of action under 42 U.S.C. § 1983 for malicious prosecution.

Plaintiff Evan J. Henry, a resident of Winona, Minnesota, owns a duplex in the city of Minneapolis which he maintains as rental property. Defendants are the City of Minneapolis, Norman Smith, a city building inspector, Donald Johnson, Smith's supervisor in the Department of Inspections, and Edward C. Vavreck, Sr., an assistant city attorney for the city of Minneapolis.

Minneapolis Ordinance Section 244.200 requires that rental property of the type owned by Henry be registered with the director of inspections. Completion of this registration requires furnishing of certain basic information regarding the structure, the name of an agent legally responsible for compliance with city ordinances for owners living outside the metropolitan area, and payment of a registration fee.

Henry was notified on April 3, 1979 that his property was not properly registered. A controversy arose between Inspector Smith and Henry over the designation of Henry's agent. Henry was apparently reluctant to repose in his tenants the broad responsibilities required of an agent under the ordinance, and inquired of Smith as to the penalty for failure to designate an agent. Smith replied by letter on April 18, 1979 that failure to have an agent could result in condemnation and vacation of the building.

On April 26, 1979, Smith notified Henry by letter that the city intended to placard his building as an unlawful structure for failure to register. Thereafter, on May 7, May 21, May 25, and June 6, 1979, Henry wrote to Smith regarding appointment of his tenants as agents, requesting an application for registration, and a copy of the ordinance. No application was sent to Henry. On June 11, 1979, a copy of a letter to Henry's tenants was sent to Smith confirming their appointment as agents. On June 15, 1979, Henry filed a formal registration composed by himself, and filed it with the city.

In the meantime, on June 7, 1979, Smith placarded Henry's property pursuant to Minneapolis, Ordinance Section 244.1450. This provision and Section 244.1460 provide for the condemnation and placarding of buildings which constitute a "hazard to the health, safety, or welfare of the occupants or the public ..." Henry thereafter removed the placard in violation of Ordinance Section 244.1510, conviction of which could subject the violator to 90 days in jail and/or a $500 fine.

Defendant Johnson was involved in this chain of events to the extent that he recommended to Smith that the building be placarded. Attorney Vavreck responded to a letter from Henry regarding the placarding, stating that the building would be placarded until it was properly registered. He also

conducted the criminal prosecution of Henry for removal of the placard. At the trial on the charge of removal of the placard, the court dismissed the charge on the basis that the building was improperly placarded in the first instance, as it presented no danger to the public health or safety.

Henry maintains, and we will assume for the purposes of this motion, that defendants Smith and Johnson issued the misdemeanor citation without probable cause, and with malice and recklessly and in willful disregard of Henry's rights. The criminal prosecution was pursued by Attorney Vavreck who knew there was no probable cause for the violation. Count I purports to set forth a cause of action of plaintiff's complaint under 42 U.S.C. § 1983 for malicious prosecution. Counts II and III set forth pendent state claims sounding in malicious prosecution and abuse of process. Henry seeks to recover damages for harm to reputation, emotional distress, lost wages, the expense of defending himself, punitive damages, and costs and attorneys' fees.

The issue presented by defendants' motion to dismiss is whether, under the given facts, plaintiff has stated a claim under 42 U.S.C. § 1983 for malicious prosecution.[1] Our Court of Appeals has not had an opportunity to address the issue of the circumstances under which a malicious prosecution action may be maintained under Section 1983. *See Sartin v. Commissioner of Public Safety*, 535 F.2d 430, 433 (8th Cir. 1976).

In assessing the adequacy of plaintiff's claims under 42 U.S.C. § 1983, the court must consider whether there has been a "deprivation of any rights, privileges or immunities secured by the Constitution and laws," as required by that statute. It is true that plaintiff's complaint should not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80

(1957). In the case of a civil rights complaint, it must state on its face a cognizable claim for relief based upon the violation of a "specific and articulable" constitutional right. *State of Missouri ex rel. Gore v. Wochner*, 620 F.2d 183, 185 (8th Cir. 1980).

Plaintiff's complaint does not specify the constitutional right that has been transgressed by defendants. It merely mimics the language of the statute, alleging that defendants' actions have deprived him of "his rights, privileges, and immunities secured by the Constitution and laws of the United States." The imprecision of the complaint in this regard, though not to be condoned in light of plaintiff's representation by counsel, is not fatal if the facts as alleged state a claim. *See Bounds v. Smith*, 430 U.S. 817, 825, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72 (1976).

Essentially, plaintiff alleges that the defendants, acting in their official capacities, with malice, and without probable cause, initiated criminal proceedings against the plaintiff under a city ordinance which defendants knew was inapplicable to plaintiff's conduct. Plaintiff has clearly set forth a common law tort action for malicious prosecution. The requisite elements under the common law in Minnesota to state a claim for malicious prosecution are the same as are generally required in other states.

They are:

1) The initiation of criminal proceedings against the accused without probable cause, *Jones v. Flaherty*, 139 Minn. 97, 165 N.W. 963 (1917),

2) Malice, *Rosvall v. Provost*, 279 Minn. 119, 155 N.W.2d 900 (1968),

3) Termination of the proceedings in favor of the accused, *Martin v. Cedar Lake Ice Co.*, 145 Minn. 452, 177 N.W. 631 (1920).

Whether defendants' actions deprived plaintiff of a right secured by the Constitution is a more difficult question.

---

**1.** Plaintiff's brief argues that he has also set forth a claim under Section 1983 for abuse of process. His complaint does not set forth such a claim. Even had plaintiff properly alleged an

action for abuse of process under Section 1983, the principles set forth in this opinion would require its dismissal.

Presumably, plaintiff is attempting to state a claim alleging a deprivation of his right to liberty as guaranteed by the Fourteenth Amendment. Section 1983 does not impose liability for violations of duty arising out of state tort law, absent a constitutional violation. Nor does a malicious prosecution offend the Constitution merely because the defendants are state officials. *See Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 2695–96, 61 L.Ed.2d 433 (1979); *Paul v. Davis,* 424 U.S. 693, 698–99, 96 S.Ct. 1155, 1159, 47 L.Ed.2d 405 (1976).

Consistency has not been the mark of the treatment of Section 1983 actions brought for malicious prosecution, but certain principles can be gleaned from these decisions which aid the resolution of the instant case. What is required to maintain a Section 1983 claim for malicious prosecution is a deprivation of "constitutional magnitude." *Hampton v. Hanrahan,* 600 F.2d 600, 630 (7th Cir. 1979); *see also Paskaly v. Seale,* 506 F.2d 1209, 1213 (9th Cir. 1974); *Nesmith v. Alford,* 318 F.2d 110, 126 (5th Cir. 1963). *But see Cook v. Houston Post,* 616 F.2d 791 (5th Cir. 1980) (no Section 1983 cause of action for malicious prosecution). There must be "something more" than an acquittal on state charges to give rise to a 1983 action. *Nesmith v. Alford,* 318 F.2d at 126. What that "something more" consists of is the source of a divergence of authority.

A number of courts have taken the view that the presence of the elements of a lack of probable cause or malice on the part of the defendants is sufficient to state a cause of action for malicious prosecution under Section 1983. *See Nesmith v. Alford,* 318 F.2d at 126; *Hampton v. Hanrahan,* 600 F.2d at 630; *see also Madison v. Manter,* 441 F.2d 537 (1st Cir. 1971). Under this view, the plaintiff's assertions that the pro-ceedings in this instance were instituted with malice and without probable cause would be sufficient to state a claim under Section 1983.

This analysis fails to consider the magnitude of the interest of the plaintiff which has been allegedly invaded by defendants' actions. Constitutional rights are shaped by the particular interest sought to be protected. *Carey v. Piphus,* 435 U.S. 247, 254, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252 (1978). In this instance, the question is reduced to whether the pendency of criminal proceedings brought for the violation of a municipal housing ordinance deprived plaintiff of a liberty interest guaranteed by the federal Constitution.[2] We think not.

In *Wells v. Ward,* 470 F.2d 1185 (10th Cir. 1972), a case brought under Section 1983 involving a detention following the issuance of a traffic ticket, the court found no deprivation of constitutional rights and entered judgment in favor of the defendants. The court pointed out that Section 1983 was enacted to prevent the kind of "aggravated lawless conduct" that obtained in the post Civil War South. *Id.* at 1187–88. While acknowledging that the Civil Rights Act as administered certainly encompasses a broader range of invasions than originally contemplated, the requirement remains that there must be a deprivation of constitutional magnitude. *Id.* at 1187. The inquiry which must be made is "the gravity of the right invaded." *Id.* Notwithstanding the existence of an invasion of an interest protected by state tort law "[i]t does not follow that all invasions, however trivial or frivolous, serve to activate remedies under the due process clause of the Fourteenth Amendment as well as those parts of the Bill of Rights which are incorporated in and made a part of due process." *Id. See also*

---

**2.** Plaintiff seeks recompense for wages lost as a result of his absenting himself from his employment in order to defend himself the day of the trial, and for the expenses associated with his *pro se* defense. Because he alleges no procedural deficiencies in the process actually afforded him at the hearing held on his violation, no claim of a constitutional deprivation is set forth, and his lost wages and expenses of defense are not recoverable. *See Cramer v. Crutchfield,* 496 F.Supp. 949 (E.D.Va.1980). Thus, the only cognizable damages suffered by plaintiff as the result of the malicious initiation of the prosecution are for injury to reputation and emotional distress.

*Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

Cases involving cognizable claims under Section 1983 typically involve harsh treatment of detained individuals, detention without warrant or arraignment, or other similar egregious behaviour on the part of government officials. *Wells v. Ward* at 1188, n.3. *See, e. g., Terket v. Lund,* 623 F.2d 29, 31, n.1 (7th Cir. 1980); *Hall v. Tawney,* 621 F.2d 607 (4th Cir. 1980); *Sami v. United States,* 617 F.2d 755, 779 (D.C.Cir. 1979). Consistent with this approach, malicious prosecution actions allowed under Section 1983 have generally involved a greater invasion of personal liberty than the mere apprehension of proceedings brought as a result of an issuance of a misdemeanor citation for violation of a housing ordinance. *See Morrison v. Jones,* 551 F.2d 939 (4th Cir. 1977) (arrest and prosecution for felony); *Jennings v. Shuman,* 567 F.2d 1213 (3d Cir. 1977) (plaintiff prosecuted for felony for purpose of extorting $150,000; constitutional deprivation resulted from deprivation of liberty concomitant to arrest *and* pendency of criminal proceedings); *Hampton v. Hanrahan,* 600 F.2d 600 (7th Cir. 1979) (plaintiffs arrested and detained; charged with a number of felonies).

In determining whether or not a specific invasion is of a constitutional magnitude, it is also appropriate to consider whether the actions of the officials causing that invasion are the type over which federal supervision is needed, and the pervasiveness or regularity of those actions. *Sami v. United States,* 617 F.2d at 773. The weight to be given these factors depends upon the circumstances of each case:

> In addition to being alert for possible abusive use of the Civil Rights Acts, the federal courts should also consider the need for federal supervision of the type of official conduct involved. Where the States have reasonably effective safeguards or remedies, a restrictive reading of the Acts is called for. The theory of the action should also be considered in deciding how strictly to construe the Acts. If the theory is merely one of tort then the Acts should be construed strictly but if the theory is to alter official conduct, a more liberal construction may be called for. If the action is for individual redress, then the Acts should be construed more strictly than in a broad class action which would be more in keeping with the philosophy of the Acts.

*Id.* at 774, *quoting, Taylor v. Nichols,* 409 F.Supp. 927, 933 (D.Kan.1976), *aff'd,* 558 F.2d 561 (10th Cir. 1977).

The instant case is not one that cries out for federal redress of plaintiff's injuries. Plaintiff suffered no actual loss of liberty in connection with the proceedings instituted against him. At worst, he suffered an irritating and vexatious experience at the hands of the city building inspectors.[3] Plaintiff has an effective state remedy sounding in tort.[4] Moreover, he is seeking redress for an individual injury rather than an injury suffered by a class of persons, or for recurring actions by government officials. All of these factors render this action inappropriate for an exercise of jurisdiction under the Civil Rights Act.

Accordingly, defendants' motion to dismiss is hereby GRANTED.

---

**3.** Our holding is in no way meant to condone the apparently unprofessional and malicious actions of the building inspectors with regard to the plaintiff.

**4.** The parties have agreed that all discovery to date in this action may be applied to the state action commenced by plaintiff at approximately the same time this action was commenced.