Richard L. OCCHINO, Appellant,

v.

UNITED STATES of America, Appellee.

Richard Leo Anthony OCCHINO, Appellant,

v.

CITY OF DULUTH, MINNESOTA, a City Municipality; County of St. Louis, Minnesota, a County Municipality; Daniel J. Valure, Duluth Police Officer; Thomas M. Cich, Duluth Police Officer; Carl E. Hammerberg, Correction Agent, County of St. Louis, Minnesota; and Gregory J. Sertich, County Sheriff, County of St. Louis, Minnesota, Appellees.

Nos. 81–1747, 81–1818.

United States Court of Appeals, Eighth Circuit.

Submitted May 18, 1982.

Decided Aug. 25, 1982.

**1304**

Meshbesher, Singer & Spence, Ltd., Cheryl Divine, Minneapolis, Minn., for appellant.

James M. Rosenbaum, U. S. Atty., Mary L. Egan, Asst. U. S. Atty., D. of Minnesota, Minneapolis, Minn., Barbara Shiels, Legal Intern, for appellee in No. 81–1747.

Alan L. Mitchell, St. Louis County Atty., Mary L. Peterson, Asst. County Atty., William P. Dinan, Duluth City Atty., Robert A. Plesha, Asst. City Atty., Duluth, Minn., for appellees in No. 81–1818.

Before LAY, Chief Judge, MARKEY,* Judge, and HENLEY,** Circuit Judge.

HENLEY, Senior Circuit Judge.

These appeals involve two consolidated cases arising out of separate incidents of alleged false imprisonment. Although Richard L. Occhino is the plaintiff-appellant in each case, the facts underlying each appeal are wholly unrelated.

In the first case, No. 81–1747, Occhino prevailed in a bench trial on his claim of false imprisonment under the Federal Tort Claims Act. 28 U.S.C. §§ 2671 et seq.

(1976). The underlying incident of detainment occurred in April and May, 1977. Appellant appeals as insufficient the district court's[1] award of $4,000.00 in damages.

In the second case, No. 81–1818, the district court dismissed appellant's action for false imprisonment under 42 U.S.C. § 1983 on the ground that the action was barred by Minnesota's two-year limitation period governing actions for false imprisonment. Minn.Stat.Ann. § 541.07(1) (West Supp. 1982). The underlying incidents of probation revocation and imprisonment pending assault charges occurred in October, November and December, 1975.

We affirm the award of compensatory damages in cause No. 81–1747. We affirm in part and reverse in part the district court's dismissal of appellant's Section 1983 claim in cause No. 81–1818.

*No. 81–1747.*

On January 7, 1977 appellant allegedly assaulted a federal protective officer in the federal courthouse in Duluth, Minnesota. He was subsequently charged with violation of 18 U.S.C. § 113(d), and was released on a personal recognizance bond.

The prosecution subsequently filed a motion for commitment on the ground that appellant was incompetent to assist in his defense. A court hearing was held on April 25, 1977, at the close of which the trial court issued a bench order, later reduced to writing, committing Occhino to the United States Medical Facility for federal prisoners at Springfield, Missouri, for a period of forty-five days. By the terms of the commitment order, the officials of the United States Medical Facility were to report to the trial court, and Occhino was to be returned to the committing court.

The commitment order did not mandate that appellant be transported forthwith or by a particular mode of transportation. In such circumstances, it was then the practice

---

\* Howard T. Markey, Chief Judge, U. S. Court of Customs and Patent Appeals, sitting by designation.

\*\* Judge Henley assumed senior status June 1, 1982.

1. The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

of the United States Marshal Service to transport persons by Bureau of Prison buses which travel set routes between the various federal institutions on a weekly or bimonthly basis.

The facts of the trip to Springfield may be summarized briefly, although by brevity of the summary we do not intend to minimize the extent of appellant's injury. Transportation from Minnesota to Springfield, Missouri, took twenty-four days. Appellant was transferred first to the Hennepin County Jail, and then to the United States Correctional Facility at Oxford, Wisconsin. From there he was sent through federal penitentiaries at Terre Haute, Indiana, Marion, Illinois, and Leavenworth, Kansas. At each penitentiary he was subjected to a strip search on entry. He was held without opportunity for exercise for five days at the Terre Haute prison, and was allowed out of his cell for exercise only once during his fourteen-day stay at Leavenworth. He was transported on prison buses in the company of convicted persons. His hands were manacled. At one point during the transport, he was placed in leg irons.

After his stay at Springfield, appellant was returned to Minnesota in a trip extending over fourteen days. The return trip, however, was made by means of charter plane and automobile. Upon return to Minnesota and reinstatement of his bond, appellant was released on July 29, 1977 in Duluth.[2]

Appellant subsequently filed a complaint alleging false imprisonment against various individual defendants and the United States. The claims against the individual defendants were eventually dismissed, leaving claims of negligence and false imprisonment against the government pursuant to the Federal Tort Claims Act. 28 U.S.C. § 2680(h) (1976).

The district court on June 15, 1981 found the government liable for false imprisonment of Occhino due to the unconscionable and unreasonable twenty-four day transfer period from Minneapolis, Minnesota to Springfield, Missouri. The court expressly found that appellant's stay at Springfield and transportation back to Minnesota were lawful in all respects. The court also found appellant's commitment to have been lawful and to have become unlawful only with the passage of time.

The court awarded Occhino compensatory damages in the amount of $4,000.00, in consideration of his loss of liberty, his emotional and physical distress, and his subjection "to a number of normal prison procedures and practices that could be deemed dehumanizing and degrading by an unconvicted person." The adequacy of that award is the subject of this appeal.

It is established that the amount of damages in a nonjury case is within the discretion of the trial court and cannot be overturned unless clearly erroneous. *Taylor v. Pre-Fab Transit Co.*, 616 F.2d 374, 375 (8th Cir. 1980); *Zatina v. Greyhound Lines, Inc.*, 442 F.2d 238, 242–43 (8th Cir. 1971). Moreover, we continue to adhere to the view that the inadequacy or excessiveness of an award is basically a matter for the trial court. We have intervened only in those rare situations where we are pressed to conclude that there is "plain injustice" or a "monstrous" or "shocking" result. *Hysell v. Iowa Public Service Co.*, 534 F.2d 775, 786 n.8 (8th Cir. 1976), *quoting Solomon Dehydrating Co. v. Guyton*, 294 F.2d 439, 447–48 (8th Cir.), *cert. denied*, 368 U.S. 929, 82 S.Ct. 366, 7 L.Ed.2d 192 (1961), *later app. Hysell v. Iowa Public Service Co.*, 559 F.2d 468 (8th Cir. 1977).

Under our standards the present award cannot be said to require reversal or modification. The award in fact reflects careful assessment of the distinctive features of the false imprisonment involved in this case. The district court recognized, for example, that deprivation of liberty pursuant to a valid court order does not constitute false imprisonment. *Mundt v. United States*, 611 F.2d 1257, 1259 (9th Cir. 1980);

---

2. The government asserts that it believed the charges were dismissed on July 29, 1977. Prosecution was not pursued thereafter. A written order dismissing the charges was issued on November 17, 1977.

*Rosvall v. Provost,* 279 Minn. 119, 155 N.W.2d 900, 904 (1968); *Jacobson v. Rolley,* 29 Ill.App.3d 265, 330 N.E.2d 256, 258 (1975); *Zeitinger v. Mitchell,* 244 S.W.2d 91, 96 (Mo.1951). The essence of appellant's injury, as correctly perceived by the court, was the harm stemming from delay.[3] This fact distinguishes the present case from those cited by appellant, in which it is necessary to compensation for an *initially* tortious detention in circumstances of false arrest. *E.g., Thurman v. Cundiff,* 2 Kan. App.2d 406, 580 P.2d 893 (1978) ($15,000.00 for false arrest and two-hour detention in jail); *City of Evansville v. Cook,* 162 Ind. App. 465, 319 N.E.2d 874 (1974) ($4,250.00 for detention in store for two hours); *Nelson v. R. H. Macy & Co.,* 434 S.W.2d 767 (Mo.App.1968) ($2,500.00 for three-hour detention). Where, as here, the original detention is lawful, the humiliation of a wrongful arrest is not a factor in the court's damage award.

The district court also addressed appellant's contention that he suffered significant emotional distress from the uncertainty of the situation in which he found himself. We acknowledge that travel away from appellant's known destination undoubtedly resulted in a certain degree of anxiety. The district court's award, however, expressly took into account such physical and emotional distress as was apparent on the record.

■■■ The fact that a pretrial detainee is subject to some of the same restrictions as convicted persons does not in itself create an injury of constitutional dimension or otherwise, so long as the restrictions do not amount to punishment in the constitutional sense of that word. *Bell v. Wolfish,* 441 U.S. 520, 536–37, 99 S.Ct. 1861, 1872–1873, 60 L.Ed.2d 447 (1979). Here, the record shows that the shackling and searches to which appellant was subject were not in disproportion to the legitimate objectives of pretrial detention. There is nothing in the record to show that appellant was subjected to abuse, degradation or denial of the basic amenities of life. *Compare Davis v. Smith,* 638 F.2d 66 (8th Cir. 1981). Appellant was segregated from the general prison population at the several federal institutions which housed him en route.

Appellant was unemployed and suffered no lost wages. He incurred no medical expenses for his alleged emotional and physical distress, and in fact did not actively complain of such distress. *Compare Herrera v. Valentine,* 653 F.2d 1220, 1231 (8th Cir. 1981) (upholding $300,000.00 award for violation of civil rights where pregnant plaintiff was subjected to severe beating and immediately sought but was denied medical aid).

Appellant is limited to recovering only compensatory damages under the Federal Tort Claims Act. 28 U.S.C. § 2674; *Carlson v. Green,* 446 U.S. 14, 22, 100 S.Ct. 1468, 1473, 64 L.Ed.2d 15 (1980); *Birnbaum v. United States,* 588 F.2d 319, 333 (2d Cir. 1978). Punitive damages which might serve a deterrent purpose are not at issue here.

We conclude that while it may approach the minimum, the award of $4,000.00 for injuries which are largely intangible is not shocking or clearly erroneous and we decline to disturb it on appeal.

*No. 81–1818.*

In May of 1975 following a trial in St. Louis County, Minnesota Court, Occhino was found guilty of disorderly conduct and was placed on probation. His probation officer was appellee Hammerberg. On October 7, 1975 Occhino was involved in a distasteful confrontation with the Duluth city administrator and with that official's secretary. He almost immediately informed his probation officer, appellee Ham-

---

**3.** The trial court, wisely in our view, declined to state a blanket rule regarding what would be a reasonable time for transporting pretrial detainees pursuant to a valid Order of Commitment.

The court specifically found the fourteen-day return trip to be lawful. Appellant does not directly challenge this finding. While we do not necessarily adopt it, we see no reason to disturb it. Thus the compensable injury for purposes of review is that stemming from some *portion* of appellant's twenty-four day trip to Springfield.

merberg, of the incident and asked what Hammerberg proposed to do about it. Hammerberg telephoned the Duluth Police Department with instructions to come to his office and arrest Occhino for violation of probation.

When police officers Thomas Cich and Daniel Valure attempted to make the arrest a physical dispute arose, and Officer Cich lost a tooth. Appellant was arrested and charges were filed against him for assaulting a police officer and resisting arrest. He was placed in the St. Louis County Jail where he remained until October 10, 1975.

Appellant's probation was revoked following a full hearing on October 14, 1975, and he was committed to the St. Louis County Jail until December 3, 1975.

The altercation between appellant and the police officers resulted in both civil and criminal suits. Officer Cich first commenced a civil action against Occhino, seeking $1,000.00 in damages for injuries sustained to his teeth. Occhino counterclaimed in this suit, alleging that he had been wrongfully beaten by the Duluth Police Department and Officer Cich. A judgment in favor of Cich in the St. Louis County Conciliation Court was appealed by Occhino to the County Court of St. Louis County. Eventually, Occhino stipulated to the dismissal with prejudice of all claims and counterclaims. He also stipulated to payment of $700.00 to Officer Cich.

Criminal charges were in the meantime filed against Occhino for criminal assault and resisting arrest. The charges resulted in three trials. Occhino was found guilty by jury on January 22, 1976, but a retrial was ordered the following year. A jury verdict of guilty at the second trial on September 7, 1978 was again followed by an order of retrial. Occhino was finally acquitted of the charges in the third jury trial on June 9, 1979.

Approximately one year and eight months after his acquittal and approximately five years and four months after the incident, Occhino on January 29, 1981 filed a pro se complaint against the City of Duluth, the County of St. Louis, police officers Thomas Cich and Daniel Valure, St. Louis County Probation Officer Carl Hammerberg, and St. Louis County Sheriff Gregory Sertich. He alleged that his civil rights were violated when he was assaulted, falsely arrested, imprisoned, and maliciously prosecuted for the Cich-Occhino altercation.

The district court dismissed the case on two grounds. As to the City of Duluth and the County of St. Louis, the court held that liability could not be predicated on the doctrine of *respondeat superior* in actions under 42 U.S.C. § 1983. As to the remaining defendants, the court held that Minnesota's two-year statute of limitations for intentional torts barred appellant's action.[4] Minn.Stat.Ann. § 541.07 (West Supp.1982).

*A. Applicable Statute of Limitations.*

The pivotal issue on appeal is whether appellant may escape the bar of Minnesota's two-year statute of limitations in light of our en banc decision in *Garmon v. Foust*, 668 F.2d 400 (8th Cir. 1982).

In *Garmon*, we considered whether, in looking to the analogous state statute of limitations for a limitations period under 42 U.S.C. § 1983, the federal court should apply the limitations period provided for a tort action, or the limitations period provided for "catchall" state actions. We concluded that where the § 1983 claimant alleges acts which may constitute both a state tort and the deprivation of a constitutional right, the appropriate statute of limitations is not that which applies to state tort actions. *Id.* at 406. The tort analogy "unduly cramps the significance of section 1983 as a broad, statutory remedy." *Id.*

Although *Garmon* involved Iowa statutes of limitations, the rationale of that case may reasonably be said to extend to the present factual context. We recognized in *Garmon* that the Civil Rights Act creates

---

**4.** Congress did not include a period of limitations for suits under § 1983. The general rule under the Rules of Decision Act and 42 U.S.C. § 1988 is that the federal action is governed by the state statute of limitations for analogous claims. *Garmon v. Foust*, 668 F.2d 400, 402–03 and nn.4, 5 (8th Cir. 1982) (en banc) (and citations therein).

rights and imposes obligations different from any which would exist at common law. *Id.* at 404, 406, *citing Glasscoe v. Howell,* 431 F.2d 863 (8th Cir. 1970). We also stated that while Iowa has no specific period of limitations for actions based upon liability created by statute, such a statute of limitations may appropriately govern a § 1983 action. *Id.* at 406 n.11.

An instance involving a state period of limitations for statutory liabilities is presented by this appeal. Minnesota law provides a six-year statute of limitations [5] for statutory actions. This limitations period is the obvious alternative to the two-year tort limitations period [6] applied by the district court.

■ Under the rationale of *Garmon,* the federal cause of action should not be foreclosed by a limitations period directed at the alleged underlying tortious conduct. *Id.* at 404. Minnesota's six-year statute of limitations clearly would apply, were appellant today to file his § 1983 action based on

a cause that accrued subsequent to our decision in *Garmon.*

The present case is complicated, however, by the fact that this is in a significant respect a pre-*Garmon* case. The incident which gave rise to appellant's § 1983 claim occurred on October 7, 1975. Appellant brought suit approximately five years and four months later, on January 29, 1981. The district court issued its summary judgment on July 31, 1981. All of these developments occurred before our decision in *Garmon* on January 5, 1982. Appellant's cause of action is saved only if *Garmon* applies retroactively.

*(i) The Standard of Retroactivity.*

Retroactive application of decisional law in present context is governed by the approach articulated in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). *United States v. Johnson,* —— U.S. ——, —— n.12, ——, 102 S.Ct. 2579, 2587 n.12, 2594, 73 L.Ed.2d 202 (1982).[7] Under *Chevron,* the court weighs several fac-

---

**5.** Minn.Stat.Ann. § 541.05 (West Supp.1982) provides in pertinent part:

Except where the uniform commercial code otherwise prescribes, the following actions shall be commenced within six years: ...

(2) Upon a liability created by statute, other than those arising upon a penalty or forfeiture or where a shorter period is provided by section 541.07[.]

**6.** Minn.Stat.Ann. § 541.07 (West Supp.1982) provides in pertinent part:

Except where the uniform commercial code otherwise prescribes, the following actions shall be commenced within two years:

(1) For libel, slander, assault, battery, false imprisonment, or other tort, resulting in personal injury, and all actions against physicians, surgeons, dentists, hospitals, sanitoriums, for malpractice, error, mistake or failure to cure, whether based on contract or tort[.]

**7.** Appellant suggests that the "*Bradley-Schooner Peggy*" rule ought to apply here. Under this rule, where there is a decisional change of state or federal substantive law between the time of trial and appeal, the appellate court must decide the case according to existing law, unless to do so would result in manifest injustice. *See Bradley v. School Board,* 416 U.S. 696, 710–12, 94 S.Ct. 2006, 2015–2016, 40 L.Ed.2d 476 (1974); *United States v. Schooner Peggy,* 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801). *See also Gross v. Harris,* 664 F.2d 667, 669 (8th Cir.

1981); *Fulton v. Harris,* 658 F.2d 641, 643 (8th Cir. 1981); *Flanigan v. Burlington Northern, Inc.,* 632 F.2d 880, 887–89 (8th Cir. 1980), *cert. denied,* 450 U.S. 921, 101 S.Ct. 1370, 67 L.Ed.2d 349 (1981).

While we do not entirely reject the *Bradley-Schooner Peggy* analysis as inappropriate in the present context, we observe that the *Chevron* approach has consistently been utilized where changes in statutes of limitations or other aspects of the timeliness of a claim are at issue. *E.g., Rivera Fernandez v. Chardon,* 681 F.2d 42 at 51 (1st Cir. 1982) (retroactive application of decision establishing new rule of accrual is subject to *Chevron* analysis); *Service Employees International Union, Local No. 36 v. Office Center Services, Inc.,* 670 F.2d 404, 412–14 (3d Cir. 1982) (new rule applying state statute of limitations analyzed under *Chevron* ); *Bronze Shields, Inc. v. New Jersey Department of Civil Service,* 667 F.2d 1074, 1084–85 (3d Cir. 1981); *Singer v. Flying Tiger Line, Inc.,* 652 F.2d 1349, 1352–54 (9th Cir. 1981); *Wachovia Bank and Trust Co., N. A. v. National Student Marketing Corp.,* 650 F.2d 342, 346–48 (D.C. Cir.1980), *cert. denied sub nom. Peat, Marwick, Mitchell & Co. v. Wachovia Bank & Trust, N. A.,* 452 U.S. 954, 101 S.Ct. 3098, 69 L.Ed.2d 965 (1981); *Rudolph v. Wagner Electric Corp.,* 586 F.2d 90, 92–95 (8th Cir. 1978), *cert. denied,* 441 U.S. 924, 99 S.Ct. 2033, 60 L.Ed.2d 397 (1979).

tors in determining whether a decision is to be applied retroactively. These factors are

> whether the court ruling in question was of first impression or 'clearly foreshadowed,' whether the retroactivity will further or retard the purpose of the rule, and whether inequities will result by retroactive application of the rule.

*Masuen v. E. L. Lien & Sons, Inc.,* 670 F.2d 87, 91 (8th Cir. 1981), *quoting Rudolph v. Wagner Electric Corp.,* 586 F.2d 90, 92 (8th Cir. 1978), *cert. denied,* 441 U.S. 924, 99 .S.Ct. 2033, 60 L.Ed.2d 397 (1979).[8]

*(ii) Application of Chevron.*

The first question under the *Chevron* analysis is whether the decision in *Garmon* "establish[ed] a new principle of law, either by overruling clear past precedent on which litigants may have relied, [citation omitted] or by deciding an issue of first impression whose resolution was not clearly foreshadowed" [citation omitted]. 404 U.S. at 106, 92 S.Ct. at 355. *Garmon* did not decide an issue of first impression. Accordingly, our concern at this point is whether there was "clear past precedent on which litigants may have relied."

*Garmon* was heard en banc to "[r]esolv[e] ... inconsistent applications of the Iowa statute of limitations in section 1983 actions." 668 F.2d at 401. We expressly noted that various panels of this court had taken somewhat inconsistent approaches. *Id.* at 403, *comparing Glasscoe v. Howell,* 431 F.2d 863 (rejecting tort analogy) and *Savage v. United States,* 450 F.2d 449 (8th Cir. 1971), *cert. denied,* 405 U.S. 1043, 92 S.Ct. 1327, 31 L.Ed.2d 585 (1972) (accepting tort analogy). Although at least since *Savage* Minnesota district courts appear to have consistently utilized the two-year tort statute of limitations for cases sounding in tort, *Zaun v. Halpern,* 382 F.Supp. 2 (D.Minn.1974); *Ames v. Vavreck,* 356 F.Supp. 931 (D.Minn.1973), they also recognized the unsettled and conflicting state of Eighth Circuit law. *Davidov v. Honeywell, Inc.,* 515 F.Supp. 1358, 1360 (D.Minn.1981), *citing Clark v. Mann,* 562 F.2d 1104, 1111 (8th Cir. 1977) and *Reed v. Hutto,* 486 F.2d 534, 537 n.2 (8th Cir. 1973); *Zaun v. Halpern,* 382 F.Supp. at 3.

In these circumstances, it cannot be said that *Garmon* overruled well-established precedent or that appellees had reason to rely on the two-year statute of limitations. *Chevron* counsels retroactivity in such an instance, where there is not a "clear break" in established law and where reliance interests are not seriously upset. 404 U.S. at 106, 92 S.Ct. at 355.

The second prong of the *Chevron* standard looks to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation. We are encouraged by this measure to apply *Garmon* retroactively. *Garmon* was intended to resolve conflicting approaches to § 1983 limitations periods in this circuit, 668 F.2d at 401, and to reject an approach which "unduly cramps the significance of § 1983 as a broad, statutory remedy." *Id.* at 406. Retroactive application of *Garmon* will achieve uniformity between future and pending cases by subjecting both to the same statute of limitations. Application of the six-year rule will give breathing space to § 1983 claims, as is consistent with the analysis in *Garmon* that "deprivation of a constitutional right is significantly different from and more serious than a violation of a state right and therefore deserves a

---

**8.** In *Chevron Oil Co. v. Huson,* 404 U.S. at 106–07, 92 S.Ct. at 355–356 (1971), the Court stated:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, [citation omitted] or by deciding an issue of first impression whose resolution was not clearly foreshadowed [citation omitted]. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." [Citation omitted.] Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." [Citation omitted.]

different remedy." 668 F.2d at 406, *quoting Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (Harlan, J., concurring).

Finally, the *Chevron* test asks whether retroactivity will result in substantial inequities. This prong of the test provides appellees their strongest argument. They contend that they had a vested right to rely on the shorter statute of limitations, and that this right cannot be taken away by subsequent decision. *Hupman v. Cook*, 640 F.2d 497, 499 (4th Cir. 1981), *quoting Kesterson's v. Hill*, 101 Va. 739, 45 S.E. 288, 289 (1903) ("... the right to set up the bar of a statute of limitations as a defense to a cause of action after the statute has run is a vested right, and cannot be taken away by legislation"), and *Link v. Receivers of Seaboard Air Line Ry.*, 73 F.2d 149, 152 (4th Cir. 1934). They note that appellant, by contrast, could have protected himself by filing within the shorter limitations period. *Hupman v. Cook*, 640 F.2d at 503 (dictum); *compare Rivera Fernandez v. Chardon*, 681 F.2d 42 at 52 (1st Cir. 1982) (decision announcing new accrual rule applied to bar suit where plaintiffs failed to advance any reason why they waited so long to file suit); *Rudolph v. Wagner Electric Corp.*, 586 F.2d at 95 (decision announcing new tolling rule applied to bar suit, where there was no contention that plaintiff was prevented or discouraged from filing timely complaint).

Occhino's only answer to appellees' argument is that he could not know of his right to file a claim until after his acquittal on assault charges. This argument has little to recommend it, given that competent legal counsel was consistently available to appellant. In essence, the third prong of the *Chevron* test tips decidedly in favor of appellees and prospectivity.

■ We nevertheless conclude on this close issue that *Garmon* should be applied retroactively. Two of the three *Chevron* tests favor retroactivity. Prospective application would be more forcefully suggested if vested property rights in appellees or

third parties were at stake, or if other substantial reason were advanced for a policy of repose. *Gross v. Harris*, 664 F.2d 667, 671 (8th Cir. 1981) (result of retroactivity might be different under *Chevron* standard if rights or properties vested in third persons were affected). Appellees do not here suggest that evidence has been disposed of, or that they in any other way actually relied on a two-year bar to appellant's suit.

Applying *Garmon* retroactively, we hold that appellant's claim is not time barred.[9]

This holding does not, however, have the effect of restoring appellant's entire claim on remand. As indicated below, we affirm in part the district court's dismissal on other grounds.

## B. *Respondeat Superior.*

The district court held as to defendants City of Duluth and County of St. Louis that appellant's entire complaint must be dismissed because liability under § 1983 may not be predicated on the doctrine of *respondeat superior*. *Monell v. Department of Social Services*, 436 U.S. 658, 690–95, 98 S.Ct. 2018, 2035–2038, 56 L.Ed.2d 611 (1978).

■ Appellant does not challenge this ruling on appeal. For purposes of clearly identifying the issues and defendants who remain on remand, however, we note that the district court's ruling was undoubtedly correct. Appellant alleged no policy or custom on the part of the City or County such as might constitute a basis for a finding of direct liability. *Walters v. City of Ocean Springs*, 626 F.2d 1317, 1323 (5th Cir. 1980) (no liability on part of city for false arrest where no municipal policy or custom was alleged to have caused injury).

## C. *Malicious Prosecution.*

The district court dismissed that portion of appellant's § 1983 claim alleging malicious prosecution on the ground of failure to state a claim. We affirm the district court's dismissal.

Appellant's pro se complaint does not distinguish between the various defendants in

---

**9.** Given this conclusion, we do not consider appellant's accrual and tolling arguments. He contends that accrual of his claim in 1979 cou-

pled with tolling of the statute of limitations brings him within the two-year statute of limitations.

alleging malicious prosecution. A liberal reading of the complaint under the facts alleged, however, reveals that only three defendants could be so charged. These are probation officer Hammerberg and police officers Cich and Valure.

Defendant Hammerberg's conduct was limited to the institution of proceedings to revoke appellant's probation. Those proceedings were terminated unfavorably to appellant when his probation was revoked. Under Minnesota law, an essential element of a malicious prosecution claim is termination of the proceedings in favor of the accused. *Behrendt v. Rassmussen*, 234 Minn. 97, 47 N.W.2d 779, 783 (1951); *Martin v. Cedar Lake Ice Co.*, 145 Minn. 452, 177 N.W. 631 (1920); *see also Henry v. City of Minneapolis*, 512 F.Supp. 293, 295 (D.Minn.1981). Appellant does not allege that his probation was revoked without due process. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *United States v. Rifen*, 634 F.2d 1142 (8th Cir. 1980); *United States v. Reed*, 573 F.2d 1020, 1023 (8th Cir. 1978).

Officers Cich and Valure were implicated in alleged malicious prosecution through Cich's civil suit against appellant, and through the state criminal prosecution for assault. Both proceedings terminated unfavorably to appellant, although the criminal conviction was ultimately overturned. In these circumstances, it cannot be said that proceedings were initiated without probable cause. Prosecution without probable cause is necessary to state a claim of malicious prosecution. *Jones v. Flaherty*, 139 Minn. 97, 165 N.W. 963 (1917); *Henry v. City of Minneapolis*, 512 F.Supp. at 295. In addition, section 1983 does not impose liability for a mere violation of state tort law. A civil rights claim depends upon allegation of a deprivation of "constitutional magnitude," which is clearly not present here. *Id.* at 296; *Cramer v. Crutchfield*, 648 F.2d 943, 945 (4th Cir. 1981).

**D.  Res Judicata.**

Officers Cich and Valure contend that the remainder of the § 1983 claim against them, involving assault, false arrest and false imprisonment, is barred by res judicata and collateral estoppel.

Officer Cich argues that the prior state court civil proceeding between himself and Occhino bars relitigation of issues which were raised or could have been in that suit. *Robbins v. District Court*, 592 F.2d 1015, 1017–18 (8th Cir.) (and citations therein) (when subsequent suit arises between the same parties concerning the same nucleus of operative fact, the bar of res judicata applies and includes alleged constitutional violations which could have been raised), *cert. denied*, 444 U.S. 852, 100 S.Ct. 107, 62 L.Ed.2d 69 (1979). Officer Valure asserts with some force that mutuality is not a requirement for defensive assertion of collateral estoppel. *Garrigan v. Giese*, 553 F.2d 35, 36 n.2 (8th Cir.), *cert. denied*, 434 U.S. 825, 98 S.Ct. 73, 54 L.Ed.2d 83 (1977); *Gerrard v. Larsen*, 517 F.2d 1127 (8th Cir. 1975). He argues that he may assert the determinations of the St. Louis County Conciliation Court as to issues that were determined by that court. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

Although these contentions appear to provide solid ground for dismissal of all the remaining claims against Cich and Valure, it is not appropriate that this court decide de novo issues presented to but not decided by the district court. *Backus v. Panhandle Eastern Pipeline Co.*, 558 F.2d 1373, 1376 (10th Cir. 1977). Also, under our briefing order in the present appeal, it would be fundamentally unfair for us to decide the res judicata and collateral estoppel issues.[10] Accordingly, we remand for

---

**10.** The court-appointed attorney for appellant was directed by the court to restrict argument in cause No. 81–1818 "to questions concerning application of the two-year Minnesota statute of limitations and whether running of the appropriate statute would have been tolled by pending prosecution of appellant." Appellant has moved to strike those portions of appellees'

briefs dealing with malicious prosecution, res judicata and collateral estoppel.

Appellant's motion is granted as to the res judicata and collateral estoppel issues.

The motion to strike is denied as to the issue of malicious prosecution. This issue, unlike that of res judicata, was decided by the district

the district court's consideration in the first instance the question whether and to what extent the bars of res judicata and collateral estoppel apply.

In sum, in cause No. 81–1818, we affirm the dismissal of all claims against the City of Duluth and the County of St. Louis. As to the remaining defendants, we affirm the dismissal for failure to state a claim of that portion of appellant's § 1983 action sounding in malicious prosecution.

Because the statute of limitations is no bar here, we reverse the dismissal of appellant's § 1983 claim for false arrest, false imprisonment and assault against Officer Cich, Officer Valure, Sheriff Sertich and Probation Officer Hammerberg. Cause No. 81–1818 is remanded to the district court for further proceedings in light of this opinion.

The district court's damage award in cause No. 81–1747 is affirmed.

court. In considering the issue, *see* Section C, *supra*, we therefore do not preempt the prerogatives of the trial court. Moreover, unlike res judicata, the malicious prosecution claim can be decided on appeal without looking beyond the facts admitted by appellant in his brief.