Robert E. COTNER, Plaintiff,

v.

Melvin CAMPBELL, et al., Defendants.

Robert E. COTNER, Plaintiff,

v.

Denny HOPKINS, et al., Defendants.

Scott E. HICKS, Plaintiff,

v.

William BECKMAN, et al., Defendants.

Wesley E. OWENS, Plaintiff,

v.

William BECKMAN, et al., Defendants.

Patrick S. OWENS, Plaintiff,

v.

William BECKMAN, et al., Defendants.

Raymond Herschel JOHNSON, Plaintiff,

v.

Larry MEACHUM, et al., Defendants.

Wendell W. LEADER, Plaintiff,

v.

William BECKMAN, et al., Defendants.

Harold HENDERSON, Plaintiff,

v.

Peggy FRIES, et al., Defendants.

Dennis J. REED, Jr., Plaintiff,

v.

Larry MEACHUM, et al., Defendants.

Nos. 85–497–C, 85–502–C, 85–507–C, 85–508–C, 85–514–C, 85–515–C, 85–525–C, 85–526–C and 85–577–C.

United States District Court,
E.D. Oklahoma.

Sept. 20, 1985.

Michael C. Turpen, Atty. Gen. for State of Okl., Oklahoma City, Okl., for defendants.

### ORDER

SEAY, Chief Judge.

These cases are before the court on its own motion to be tested under 28 U.S.C. § 1915(d) to determine whether they are frivolous, malicious, or improper. Because these cases involve common questions of law, on its own motion the court orders

that they should be consolidated, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure.

Each and every plaintiff is an inmate of the Oklahoma State Penitentiary. They instituted these actions pursuant to 42 U.S.C. §§ 1983–88 and 28 U.S.C. § 1343(3) seeking declaratory and injunctive relief and compensatory damages for claimed deprivations of their civil rights.

In 85–577–C, plaintiff Cotner alleges defendants have interfered with his mail by intercepting and censoring it in accordance with "illegal" Department of Correction policies.

In the remaining cases, each complaint is a virtual verbatim copy of plaintiff Cotner's complaint in 85–502–C. Indeed, a few of the complaints are merely photocopies of another prisoner's complaint. Each complaint names the same defendants, makes the same allegations, contains identical causes of action, and seeks identical relief. Essentially, the complaints each allege that all named defendants are engaged in a conspiracy to violate the plaintiffs' civil and constitutional rights. Plaintiffs allege that the conspirators have developed a scheme to endanger the health and safety of the prisoners, to violate the *Battle v. Anderson* rulings, to use the Oklahoma prison system to defraud taxpayers and prisoners, and to carry on an illegal criminal enterprise for their own monetary and political interests. Plaintiffs allege defendants have exhibited a total disregard for the prisoners and society in general. As an example of this disregard for rights, each plaintiff makes the following recitation in his complaint:

"Defendants have had over 54 acts of violence at O.S.P. McAlester, and 5 escapes, and 8 murders in the 1st few months of 1985, while the plaintiff and others have been housed there, and NOW defendants have ordered double celling which will mean an *additional* 108 acts of violence, 10 escapes and 16 unsolved murders instead of the lower amount from single celling. Defendants NOW are forcing non-homosexual men to sleep and live in a one man cell with homosexual men, violent to live with non-violent, smokers to live with non-smokers, short time prisoners to live with long term prisoners, religious prisoners to live with non-religious, ones with a T.V. and ones with a radio (*who* will watch what, and when, etc.) and the people could not get along together BEFORE they were put in prison, so now it is forcing them into a deadly environment when *NO* medical help is available without a 45 min. delay (travel through 7 locked doors, 3 flights of stairs, another locked door, and ½ mile walk, for "EMERGENCY" help!) The food service and clothing service and laundry can *NOT* provide proper service to the prisoners already here, let alone 100% more!"

### DISMISSING ALL ACTIONS

■ The complaints are subject to dismissal for a variety of legal reasons. Initially, the court notes that in every case, except No. 85–577–C, the plaintiffs do not allege they have been personally deprived of any constitutional right. State inmates may not assert the constitutional rights of other inmates. *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Hall v. Wooten*, 506 F.2d 564 (6th Cir.1974).

■ Secondly, each and every complaint in this action is fatally defective because each brings before the court only the conclusory allegations of plaintiffs. They have submitted no supporting facts or any details at all which would support the maintenance of a cause of action under 42 U.S.C. § 1983 or any of the other statutes cited by them. The plaintiffs have wholly failed to allege any factual matter which would demonstrate any substantial, identifiable federal constitutional deprivation warranting the scrutiny of the federal courts.

■ The court concludes that a special report, as contemplated by *Martinez v. Aaron*, 570 F.2d 317 (10th Cir.1978) and *Martinez v. Chavez*, 574 F.2d 1043 (10th

Cir.1978) is unnecessary and unwarranted in light of a review of the plaintiffs' complaints. The court deems it unnecessary to obtain further information where the complaints are so clearly insufficient to raise claims of constitutional magnitude or devoid of any factual material evidencing constitutional violations.

Plaintiffs' broad conclusory allegations of constitutional violations are unsupported by any facts in support of such charges. The facts pleaded do not show any deprivation of constitutional rights in any of plaintiffs' causes of action.

■ The Tenth Circuit Court of Appeals has consistently held that bald conclusions, unsupported by allegations of fact, are legally insufficient; and pleadings containing only such conclusory language may be summarily dismissed or stricken without a hearing, *Lorraine v. United States*, 444 F.2d 1 (10th Cir.1971); *Atkins v. Kansas*, 386 F.2d 819 (10th Cir.1967); *Hilliard v. United States*, 345 F.2d 252 (10th Cir.1965); *Martinez v. United States*, 344 F.2d 325 (10th Cir.1965). In *Wise v. Bravo*, 666 F.2d 1328 (10th Cir.1981), the following appears:

"... Constitutional rights allegedly invaded, warranting an award of damages, must be specifically identified. Conclusory allegations will not suffice. *Brice v. Day*, 604 F.2d 664 (10th Cir.1979), *cert. denied*, 444 U.S. 1086 [100 S.Ct. 1045, 62 L.Ed.2d 772] (1980)."

In *Wells v. Ward*, 470 F.2d 1185 (10th Cir.1972), the court quoted from the opinion of Judge Breitenstein in *Freeman v. Flake*, 448 F.2d 258 (10th Cir.1971), *cert. denied*, 405 U.S. 1032, 92 S.Ct. 1292, 31 L.Ed.2d 489 (1972), in part as follows:

"... The existence of the § 1983 remedy does not require that federal courts entertain all suits in which constitutional deprivations are asserted. A federal constitutional question must exist 'not in mere form, but in substance, and not in mere assertion, but in essence and effect.' *Cuyahoga River Power Co. v. Northern Ohio Traction & Light Co.*, 252 U.S. 388, 397, 40 S.Ct. 404, 408, 64 L.Ed. 626." 470 F.2d at 1189.

■ While the court views the complaints in the light most favorable to the plaintiffs in considering a motion to dismiss under Federal Rules of Civil Procedure 12(b), the court distinguishes between well-pleaded facts and conclusory allegations. The court disregards unsupported conclusions, *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir.1976). Therefore, the court finds that plaintiffs' complaints do not state claims for any constitutional deprivation, and are therefore frivolous.

Finally, in the case of *Cotner v. Oklahoma National Guard*, No. 83–174–C (E.D.Ok.1983), the court was apprised of a letter written by plaintiff Cotner and mailed to the Attorney General's Office. Cotner's letter is an open threat to taxpayers, demanding that he be released from prison lest he file numerous civil suits at taxpayer's expense, and encourage and train other inmates to do likewise. A copy of that letter is annexed to this order and is identified as "Attachment A". In that letter, plaintiff Cotner stated:

"..., *plus* that certain prisoner [Cotner] filed over 15 federal law suits which cost tax-payers *another* $100.00 each (totalling $1,500.00) just to file them, and *another* $100.00 pr. month, *each* just for the state attorneys to answer each one, *each* month, which is a total of *another* $1,200.00 of tax-payers money, *pr. year, pr. case* (totalling $18,000.00 per year) *and* if that is multiplied over the intire 10 years that that one prisoner is to be kept in prison, it comes to a total cost *to the tax-payers* of about $363,500.00 *just* to punish that one prisoner (one prisoner!) for $45.00 worth of marijuana! *is it worth it?* what about the other prisoners that that one prisoner will teach and/or help to file their own civil suits, *what will that cost the tax-payers....*"

In these cases, at least, the cost to tax-payers will be far less than what plaintiff Cotner obviously had hoped.

Cotner's "pupils" have followed their lessons so well that their complaints even read the same as their pedagogue—a bit

too much so. It is readily apparent that Cotner has done much more than "teach and/or help" other prisoners to file their frivolous lawsuits. Their complaints are obvious copies of plaintiff Cotner's petition in No. 85–502–C. To suggest otherwise serves only to test the gullibility of the credulous, and requires this court to espouse a naivete unwarranted under the circumstances.

Cotner's prolific abuse of his *in forma pauperis* privilege is well-known, and will be discussed in detail later in this order. These complaints are but further examples of his malicious intent to disrupt the courts and to make others pay for his mistakes. These actions are frivolous, malicious and improper—and this court so finds.

■ Because of Cotner's demonstrated history of filing frivolous lawsuits, because his letter to the Attorney General clearly indicates those lawsuits were filed for malicious purposes, because he threatened in his letter to do exactly what was done in these cases, and because the remaining plaintiffs took part in this scheme of Cotner's, the court finds that plaintiffs have abused their *in forma pauperis* privilege.

This court authorized the commencement of these actions *in forma pauperis* under the authority of 28 U.S.C. § 1915. Subsection (d) of that statute permits the dismissal of cases when the court is satisfied that the actions are frivolous. Moreover, both the Supreme Court and the Tenth Circuit Court of Appeals have held that federal jurisdiction does not lie where purported civil rights claims are simply unsubstantial. *See Hagans v. Lavine*, 415 U.S. 528, 536, 94 S.Ct. 1372, 1378, 39 L.Ed.2d 577 (1974); *Wells v. Ward*, 470 F.2d 1185, 1187 (10th Cir.1972). In view of its holding that plaintiffs have suffered no deprivation of rights constitutionally protected, the court concludes that these actions are frivolous and that plaintiffs' claims are unsubstantial. Accordingly, these actions are, in all respects, dismissed.

## FINDING PLAINTIFF COTNER IN VIOLATION OF COURT ORDER AND IMPOSING APPROPRIATE SANCTIONS

The federal district courts spend an ever-increasing percentage of time on prisoner rights cases.[1] In 1984, United States District Courts entertained 31,107 prisoner petitions—roughly ten percent of all cases filed.[2] In this district alone, 159 prisoner petitions were filed in the 1984 fiscal year.[3] These filings amounted to over seventeen percent of all cases filed in this district during 1984. During the present fiscal year, this court has thus far entertained 86 prisoner civil rights complaints and 36 habeas corpus petitions. The actual number of these prisoner cases found to have merit is extremely small.[4]

The sheer volume of these prisoners' cases causes extreme frustration and hardship for all who deal with them. Prison officials must use their limited funds to accommodate a seemingly endless list of prisoner rights. Adequate law libraries, legal clerks, sufficient prisoner access to the library and courts, copying facilities, and mailing privileges are but a few of the many demands made upon the wardens and directors of our correctional institutions. Prison officials must work under the constant threat of having to defend themselves against frivolous claims for money damages filed maliciously by inmates seeking revenge. Court clerks are in the unenviable position of having to receive, file and index hundreds of prisoner petitions. Sum-

1. In 1974, federal district courts received 5,236 prisoner petitions. Ten years later, in 1984, the federal courts are suffering from an approximate 500 percent increase in prisoner rights cases.

2. *Federal Court Management Statistics*, p. 129 (Administrative Office of the United States Courts, 1984).

3. Statistics for this court were obtained from the Office of the Clerk of the Court, United States District Court for the Eastern District of Oklahoma.

4. *See* Report of the Study Group on the Caseload of the Supreme Court, 57 F.R.D. 573, 587 (1972).

mons must be issued to all named parties, thereby removing the last obstacle to the avalanche of legal papers which inevitably follow. This torrential stream of written verbage inevitably winds itself to the deputy court clerks. Each and every document must be noted on the corresponding docket sheet, filed, indexed and stored in facilities already subjected to overcrowding by the proliferation of other lawsuits. State attorneys must struggle to understand the vague but verbose pleadings, so that adequate responses may be prepared for the courts by their overburdened deputies and assistants. The judges, magistrates and law clerks of the federal branch, more accustomed to the style, grace, and thoroughness of pleadings filed by professional attorneys, must grapple with the sometimes illegible and almost always incomprehensible pleadings of the prisoners. Threatening or maligning remarks made to the judge and his staff must be ignored and must not be allowed to interfere with the decision on the merits. Taxpayers grow weary of seeing their hard-earned dollars spent defending against frivolous actions filed by felons who have already caused the government to spend a tidy sum of its limited revenues to convict and incarcerate the offenders. Even the prisoners are subject to the horrible repercussions of this explosion in frivolous prisoner rights complaints. The prisoner who actually suffers a meaningful deprivation of his constitutional rights, but has no money to afford a trained lawyer, must act pro se, and labor through a confusing maze of rules, pleadings, motions, decisions, and law in order to vindicate his guaranteed rights. He must hope that in that sea of frivolous prisoner complaints, his lone, legitimate cry for relief will be heard by a clerk, magistrate or judge grown weary of battling the waves of frivolity. *See generally*, Sensenich, I.J., *Compendium of the Law on Prisoners' Rights.* (Federal Judicial Center, 1979).

The task of correcting this abuse seems to be virtually impossible. Prisoners file cases at no cost to themselves, and without fear of retaliation. Case law dictates that such actions may not be dismissed for fail-ure to state a claim unless it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Accordingly, the courts are usually forced to order the preparation of special reports so that frivolous actions may be dismissed on the merits. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir.1978); *Martinez v. Chavez*, 574 F.2d 1043 (10th Cir. 1978); *Robinson v. Benton*, 579 F.2d 70 (10th Cir.1978). The entire process takes several months to complete, and is overly costly to the taxpayers—who, in return for their substantial investment in our government, deserve a great deal more than mere court orders dismissing frivolous prisoner petitions.

This court is not a legislative body, however. It cannot create laws or rules to remedy a national problem. This court must accept the laws as written by our legislators, and as interpreted by our higher courts.

This does not mean, however, that this court must sit idly by whilst a prisoner maliciously seeks to hinder the system of justice which incarcerated him for his transgressions against society. This court cannot allow itself, the taxpayers, and prisoners to be victimized by the actions of a malicious remonstrant whose quest in life seems to be nothing more than the denial of justice to others. It is the actions of this person—the repetitive prisoner rights plaintiff, the malicious avenger—and others like him, which have led to the present dilemma. Prisoner Cotner is but one of the many litigious transgressors abusing their *in forma pauperis* privileges.

The court has exhibited great patience with plaintiff Cotner's conduct. His applications to proceed *in forma pauperis* have been routinely granted, pursuant to authority of 28 U.S.C. § 1915; his pro se complaints are construed liberally, as is required by *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652, *reh'g denied* 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972); investigations of his claims are or-

dered and special reports are prepared and filed, as contemplated by *Martinez v. Aaron,* 570 F.2d 317 (10th Cir.1978) and *Martinez v. Chavez,* 574 F.2d 1043 (10th Cir. 1978); his complaints are dismissed only if it appears beyond doubt that he can prove no set of facts in support of his claims which would entitle him to relief, in accordance with *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

From October 1982 until the present, this court has permitted plaintiff Cotner to file twelve complaints *in forma pauperis,* and in addition the court has permitted plaintiff to file three habeas corpus actions *in forma pauperis,* pursuant to the provisions of 28 U.S.C. § 1915. Until June 9, 1983, plaintiff's motions for leave to file *in forma pauperis* were routinely granted.

In *Cotner v. Oklahoma National Guard,* No. 83–174–C (E.D.Ok.1983), the court concluded that plaintiff Cotner had abused court process by the filing of successive, frivolous complaints. *See Graham v. Riddle,* 554 F.2d 133 (4th Cir.1977).

In its order dismissing *Cotner v. Oklahoma National Guard,* this court traced Cotner's continued abuse of court process—from his actions charging a wide variety of conspiracies (*Cotner v. United States Postal Service,* No. 82–528–C; *Cotner v. Sheriff Frank Thurmon,* No. 82–481–C; *Cotner v. Oklahoma Bar Association,* No. 83–63–C) to his filing of repetitive claims (*Cotner v. Oklahoma Corrections,* No. 82–456–C; *Cotner v. Department of Corrections,* No. 82–472). Additionally, the court noted that plaintiff Cotner had filed numerous civil suits against defendants who were immune from § 1983 actions. Finally, the court took notice of Cotner's letter to the Attorney General ("Attachment A"). Plaintiff's claims were, again and again, found to be unsubstantiated and were dismissed as being frivolous.

This court found that plaintiff Cotner had a demonstrated history of filing frivolous lawsuits, and that his letter to the Attorney General clearly indicated those lawsuits were filed for malicious purposes. Accordingly, this court found that plaintiff had abused his *in forma pauperis* privilege.

It is quite clear that Congress, while intending to extend to poor and meritorious suitors the privilege of having their wrongs redressed without the ordinary burdens of litigation, at the same time intended to safeguard members of the public against an abuse of the privilege by evil-minded persons who might avail themselves of the shield of immunity from costs for the purpose of harassing those with whom they were not in accord, by subjecting them to vexatious and frivolous legal proceedings.

*Graham v. Riddle,* 554 F.2d at 134.

In well documented and extreme cases, reasonable restrictions may be placed on all litigants who seek to advance repetitive causes, who file actions for obviously malicious purposes, and who generally abuse the processes. *Phillips v. Carey,* 638 F.2d 207 (10th Cir.), *cert. denied,* 450 U.S. 985, 101 S.Ct. 1524, 67 L.Ed.2d 821 (1981). Robert E. Cotner has undoubtedly abused his *in forma privilege* by filing frivolous lawsuits, by filing repetitive actions, by suing defendants he knows to be immune, and by filing actions for malicious purposes. Since October 1982, Cotner has filed 15 actions in this district alone (constituting over three percent of *all* prisoner rights actions filed in this district!) Ten of these actions were dismissed as being frivolous, two were dismissed at plaintiff's request, one was dismissed for failure to exhaust administrative remedies, and two were dismissed for abuse of process.

In response to Cotner's malicious abuse of people and process, this court, by order dated June 9, 1983, made the following decision:

> ..., pursuant to the court's finding that plaintiff has abused court process, in the future, leave to filed *in forma pauperis* will be denied plaintiff except upon a showing of good cause why he should be permitted to sue in a particular case at public expense, *West v. Procunier,* 452 F.2d 645, 646 (9th Cir.1971).

Additionally, in every cause of action hereafter filed in this court, plaintiff is ordered to satisfy the following requirements:

1. All pleadings hereafter submitted by plaintiff for filing shall be verified, as provided for in Fed.R.Civ.P. 11.

2. Plaintiff shall include in every complaint or petition hereafter submitted a list, by style, docket number, court, date filed, description and disposition, of (a) all cases previously filed on the same, similar or related cause of action and (b) all actions previously filed against one or more of the defendants, including predecessors or successors in interest or office.

3. Plaintiff shall personally send a copy of the complaint and every subsequent pleading to the defendants or defense counsel, and plaintiff shall submit documentary evidence of such service to the court in a supplemental pleading, *Carter v. Telectron, Inc.*, 452 F.Supp. 944, 1003 (1977); 28 U.S.C. § 1651.

*Cotner v. Oklahoma National Guard*, pp. 3–4.

(Copy of complete order is annexed to this order and identified as "Attachment 1").

The above order, however, seems to have had little effect upon the vexatious actions of plaintiff Cotner. Since the date of that order, Cotner has, in this court, filed four additional § 1983 actions at public expense. Moreover, he has arranged for seven other plaintiffs to assist him with his malicious plans by filing copies of his [Cotner's] complaint under their individual names. It is clearly apparent that something more is needed to halt Cotner's abuse of the judicial process.

Accordingly, pursuant to the court's finding that plaintiff Cotner has abused court process, the court sets aside its previous orders granting plaintiff leave to proceed *in forma pauperis* in 85–577–C and 85–502–C.

 Furthermore, because of his prior pattern of abuse, which this court has no reason to expect will abate, plaintiff Cotner henceforth shall carry a stronger burden of proving that he is economically unable to pay the initial filing and service fee, or some portion thereof, and that the action is in good faith and not "without arguable merit" or malicious.

The requirements placed upon Cotner by the order of this court in *Cotner v. Oklahoma National Guard*, No. 83–174–C, are declared to remain in full force and effect.

Finally, the court finds that plaintiff Cotner has violated the court order of June 9, 1983, by filing four successive prisoner rights actions at public expense without first meeting the requirements imposed upon him by the court order in 83–174–C.

The pro se litigant is vested with many rights, but none of them entitle him to flagrantly ignore relevant rules of law and valid court orders. *Faretta v. California*, 422 U.S. 806, 835 n. 46, 95 S.Ct. 2525, 2541 n. 46, 45 L.Ed.2d 562 (1975). This court is not responsible for instructing plaintiff Cotner on matters regarding ethical responsibilities in filing pleadings. *Cf. McKaskle v. Wiggins*, 465 U.S. 168, ——, 104 S.Ct. 944, 953, 79 L.Ed.2d 122 (1984), *reh'g denied*, 465 U.S. 1112, 104 S.Ct. 1620, 80 L.Ed.2d 148, *on remand*, 729 F.2d 1026 (5th Cir.1984); *Welsh v. Steinmetz*, No. Civ. 84–1846, slip op. at 2 (D. NM, Dec. 20, 1984).

In its order of June 9, 1983, this court imposed upon plaintiff Cotner the duty of verifying all pleadings in accordance with Rule 11, Fed.R.Civ.P. Rule 11 states, in pertinent part:

[The signature of a pro se litigant] constitutes a certification by him that he has read the pleading, ... that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for extension, modification or reversal of existing law, *and that it is not interposed for any improper purpose, such as to harass or cause unnecessary de-*

*lay or needless increase in the cost of litigation.*

(emphasis added).

Plaintiff's pleadings in these matters are, once again, frivolous, and are totally without factual and legal support. Moreover, it is obvious, in light of plaintiff Cotner's past conduct and present circumstances, that these actions were interposed for an improper purpose such as to harass or cause unnecessary delay and legal expense.

Pursuant to Rule 11, the court may impose an appropriate sanction upon the plaintiff for signing the pleadings in violation of Rule 11, Fed.R.Civ.P. The sanction in this case shall be a $1,000.00 fine.

NOW, THEREFORE, IT IS ORDERED as follows:

1. All complaints are dismissed with prejudice and plaintiffs shall take nothing by their complaints.

2. The court orders granting plaintiff Cotner leave to file *in forma pauperis* are set aside and denied.

3. Plaintiff Cotner shall tender to the court clerk, for deposit into the court registry, a fine of $1,000.00 within thirty days from the date of entry of this order.

4. Plaintiff Cotner is barred from filing further actions in this court until the $1,000.00 fine imposed above has been paid in full.

5. Henceforth, plaintiff Cotner shall carry a stronger burden of proving that he is economically unable to pay the initial filing and service fee, or some portion thereof.

6. Henceforth, prior to allowing plaintiff Cotner to proceed *in forma pauperis,* he must sufficiently demonstrate to the court that his action is in good faith and not "without arguable merit" or malicious.

7. All pleadings hereafter submitted by plaintiff Cotner for filing shall be verified, as provided for in Rule 11, Fed.R.Civ.P.

8. Plaintiff Cotner shall include in every complaint or petition hereafter filed a list, by style, docket number, court, date filed, description and disposition, of every action filed by him in this and every other court of law or equity.

9. Plaintiff Cotner shall personally send a copy of the complaint and every subsequent pleading to the defendants or defense counsel, and plaintiff shall submit documentary evidence of such service to the court in a supplementary pleading. *Carter v. Telectron, Inc.,* 452 F.Supp. 944, 1003 (1977); 28 U.S.C. § 1651.

10. Hereafter, in every action filed in this court, plaintiff Cotner shall make specific reference to this order, and shall detail to the court how he has complied with each and every requirement imposed upon him by this order.

Failure of plaintiff Cotner to comply with any of these orders will subject him to the imposition of an appropriate sanction, including further restrictions on the nature of his access to the courts.

## ATTACHMENT 1

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

ROBERT E. COTNER, Plaintiff,

vs.

OKLAHOMA NATIONAL GUARD, et al., Defendants.

No. 83–174–C

ORDER

This case is before the court to be tested under 28 U.S.C. § 1915(d) to determine whether it is frivolous, malicious, or improper.

The plaintiff Robert E. Cotner is an inmate of the Stringtown Correctional Institution. He instituted *Cotner v. Oklahoma National Guard,* 83–174–C, pursuant to 42 U.S.C. §§ 1983–88 and 28 U.S.C. § 1343(3) seeking declaratory and injunctive relief and compensatory damages for claimed deprivations of his civil rights. Plaintiff alleges that defendants conspired to use "agent orange" herbicides on land located in Oklahoma. Plaintiff alleges he was ex-

posed to the herbicides and he now suffers from various illnesses as a result of said exposure. Plaintiff further alleges that defendants have knowingly conspired to conceal the evidence of damages caused by the use of the herbicide.

## GRANTING MOTIONS TO DISMISS

Plaintiff's action against Oklahoma National Guard must be dismissed because said defendant is not a "person" for purposes of 42 U.S.C. § 1983 and 1985. *Coopersmith v. Supreme Court of Colorado,* 465 F.2d 993 (10th Cir.1972).

As to defendants Dow Chemical Company, Ethyl Corporation, Monsanto Company, Pennwalt Corporation, General Anoline and Film Corporation, and Ansul Chemical Company, plaintiff's action must also be dismissed. A complaint should be dismissed for failure to state a claim only when it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief, *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). One essential element of a cause of action under 42 U.S.C. § 1983 is that the defendants' action be taken under color of state law, *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).

The court finds that plaintiff has not alleged facts sufficient for the court to even remotely infer that the alleged actions of defendants were committed under color of state law, custom, usage or regulation as required by the asserted basis of this claim. While plaintiff may have stated facts sufficient to support a tort claim under state procedure, his complaint wholly fails to assert a claim cognizable in this court.

## FINDING PLAINTIFF'S
## ACTION FRIVOLOUS

Plaintiff has recently filed numerous other actions in this district alleging a wide variety of conspiracies, all in violation of plaintiff's civil rights.

In *Cotner v. United States Postal Service, et al.,* No. 82–528–C, plaintiff alleged a conspiracy between the United States Postal Service and the Oklahoma Department of Corrections to deny plaintiff direct access to the United States mails. In *Cotner v. Sheriff Frank Thurman, et al.,* No. 82–481–C, plaintiff alleged a conspiracy between various law enforcement officers to murder plaintiff. In *Cotner v. Oklahoma Bar Association, et al.,* No. 83–63–C, plaintiff alleged a conspiracy between various attorneys and the Bar to prevent an investigation of certain Oklahoma attorneys. All of these cases were found to be frivolous and were dismissed by this court.

Plaintiff has also filed repetitive claims. In *Cotner v. Oklahoma Corrections, et al.,* No. 82–456–C, and *Cotner v. Department of Corrections, et al.,* No. 82–472–C, plaintiff alleged a variety of civil rights violations due to conditions of confinement at Stringtown. All of Cotner's allegations were investigated by the Department of Corrections and a special report was filed with this court, in accordance with *Martinez v. Aaron,* 570 F.2d 317 (10th Cir. 1978), *Martinez v. Chavez,* 574 F.2d 1043 (10th Cir.1978), and *Robinson v. Benton,* 579 F.2d 70 (10th Cir.1978). All of plaintiff's claims were found to be unsubstantiated and the court dismissed both actions as being frivolous.

Additionally, plaintiff Cotner has filed numerous civil rights suits against defendants who are immune from § 1983 actions. The instant case is the most recent example of such conduct. Seven of the eight defendants in his case were found to be immune from this § 1983 action.

Since 1982 began, Cotner has filed ten cases in this district. Of these ten cases, six were dismissed as being frivolous, one was dismissed for failure to exhaust administrative remedies, one was dismissed by plaintiff's own motion, and two are still pending.

Furthermore, on April 8, 1983, the Attorney General's Office received a statement prepared by plaintiff entitled "Is It Worth It?" A copy of that statement is annexed

to this order and is identified as "Attachment A". In that statement plaintiff said:

"..., *plus* that certain prisoner [Cotner] filed over 15 federal law suits which cost tax-payers *another* $100.00 each (totalling $1,500.00) just to file them, and *another* $100.00 pr. month, *each* just for the state attorneys to answer each one, *each* month, which is a total of *another* $1,200.00 of tax-payers money, *pr. year, pr. case* (totalling $18,000.00 pr. year) *and* if that is multiplied over the intire 10 years that that one prisoner is to be kept in prison, it comes to a total cost *to the tax-payers* of about $363,500.00 *just* to punish that one prisoner (one prisoner!) for $45.00 worth of marijuana! *is it worth it?* what about the other prisoners that that one prisoner will teach and/or help to file their own civil suits, *what will that cost the tax-payers....*"

Because plaintiff has a demonstrated history of filing frivolous lawsuits, and because plaintiff's letter to the Attorney General clearly indicates those lawsuits were filed for malicious purposes, this court finds that plaintiff has abused his in forma *pauperis* privilege.

This court authorized the commencement of this action *in forma pauperis* under the authority of 28 U.S.C. § 1915. Subsection (d) of that statute permits the dismissal of a case when the court is satisfied that the action is frivolous. Moreover, both the Supreme Court and the Tenth Circuit Court of Appeals have held that federal jurisdiction does not lie where a purported civil rights claim is simply unsubstantial. *See Hagans v. Lavine*, 415 U.S. 528, 536, 94 S.Ct. 1372, 1378, 39 L.Ed.2d 577 (1974); *Wells v. Ward*, 470 F.2d 1185, 1187 (10th Cir.1972). In view of its holding that plaintiff has suffered no deprivation of rights constitutionally protected, the court concludes that this action is frivolous and that plaintiff's claim is unsubstantial. Accordingly, this action is, in all respects, dismissed.

In well documented and extreme cases, reasonable restrictions may be placed on all litigants who seek to advance repetitive causes, who file actions for obviously malicious purposes, and who generally abuse the processes, *Phillips v. Carey*, 638 F.2d 207 (10th Cir.1981). Robert E. Cotner has undoubtedly abused his in forma pauperis privilege by filing frivolous lawsuits, by filing repetitive actions, and by suing defendants he knows to be immune. Since 1982 began, Cotner has filed, by his own admission, fifteen civil rights cases. Ten of these cases have been filed in this district alone—so many that the court is still attempting to process them all.

Therefore, pursuant to the court's finding that plaintiff has abused court process, in the future, leave to file *in forma pauperis* will be denied plaintiff except upon a showing of good cause why he should be permitted to sue in a particular case at public expense, *West v. Procunier*, 452 F.2d 645, 646 (9th Cir.1971).

Additionally, in every cause of action hereafter filed in this court, plaintiff is ordered to satisfy the following requirements:

1. All pleadings hereafter submitted by plaintiff for filing shall be verified, as provided for in Fed.R.Civ.P. 11.

2. Plaintiff shall include in every complaint or petition hereafter submitted a list, by style, docket number, court, date filed, description and disposition, of (a) all cases previously filed on the same, similar or related cause of action and (b) all actions previously filed against one or more of the defendants, including predecessors or successors in interest or office.

3. Plaintiff shall personally send a copy of the complaint and every subsequent pleading to the defendants or defense counsel, and plaintiff shall submit documentary evidence of such service to the court in a supplemental pleading, *Carter v. Telectron, Inc.*, 452 F.Supp. 944, 1003 (1977); 28 U.S.C. § 1651.

IT IS SO ORDERED this 9th day of June, 1983.

/s/ Frank H. Seay
Frank H. Seay
United States District Judge

ATTACHMENT A

IS IT WORTH IT ?

FOR $45.00 WORTH OF MARIJU., TULSA OKLA. DISTRICT ATTORNE. AND POLICE SPENT OVER $2,000.00 JUST TO GATHER EVIDENCE AND INFORMATION TO GET AN ARREST WARRENT. TO TAKE THE CASE ALL THE WAY THROUGH JURY TRIAL, $6,000.00 MORE TAX DOLLARS WERE SPENT FOR THE APPEALS TO STATE AND FEDERAL COURTS THE AMOUNT OF COST TO TAX-PAYER COST ANOTHER 1,000.00. NOW, THAT PERSON RECEIVED 10 YEARS, WHICH COST THE TAX-PAYERS AN ADDITIONAL $17,000.00 PR. YEAR JUST TO KEEP HIM IN PRISON, WHICH COMES TO A TOTAL OF $45,000.00 MORE TAX-PAYERS MONEY, PLUS THAT CERTIAN PRISONER FILED OVER 15 FEDERAL LAW SUITS WHICH COST TAX-PAYERS ANOTHER $100.00 EACH(TOTALLING $1,500.00) JUST TO FILE THEM, AND ANOTHER $100.00 PR. MONTH, EACH JUST FOR THE STATE ATTORNEYS TO ANSWER EACH ONE, EACH MONTH, WHICH IS A TOTAL OF ANOTHER $1,200.00 OF TAX-PAYERS MONEY, PR.YEAR, PR. CASE (TOTALLING $18,000.00 PR. YEAR) AND IF THAT IS MULTIPLIED OVER THE INTIRE 10 YEARS THAT THAT ONE PRISONER IS TO BE KEPT IN PRISON, IT COMES TO A TOTAL COST TO THE TAX-PAYERS OF ABOUT $363,500.00 JUST TO PUNISH THAT ONE PRISONER (ONE PRISONER !) FOR $45.00 WORTH OF MARIJUANA ! IS IT WORTH IT ? WHAT ABOUT THE OTHER PRISONERS THAT THAT ONE PRISONER WILL TEACH AND/OR HELP TO FILE THEIR OWN CIVIL SUITS, WHAT WILL THAT COST THE TAX-PAYERS, SIMPLY BECAUSE TULSA AUTHORITIES REFUSE TO RELEASE THAT ONE PRISONER FROM PRISON, OVER ONLY $45.00 WORTH OF MARIJUANA,(LESS THAN 1 OZ.)?

I AM THAT PRISONER, I DO NOT USE MARIJUANA. THE MARIJUANA WAS NOT MINE; BUT MY ½ BROTHERS. I AM AGAINST DRUGS, BUT IT WAS ME THAT WAS ARRESTED AND CONVICTED ! DON'T YOU THINK IT WOULD BE BETTER FOR 'SOCIATYS' SAKE, MY SAKE, AND FOR THE TAX-PAYERS (YOUR SAKE) TO RELEASE ME FROM PRISON NOW, INSTEAD OF AFTER I HAVE BEEN FORCED TO SERVE THE INTIRE 10 YEAR SENTENCE, AS THE SAVEINGS TO YOU, THE TAX-PAYERS, WOULD BE WELL OVER $300,000.00 !

PLEASE ADVISE. THANK YOU.

SINCERLY,

*Robert E. Cotner*

ROBERT E. COTNER

#93780, P.O. BOX 220

STRINGTOWN, OKLA. 74569

DATED: 2/19/83

PLEASE SEND COPYS OF THIS TO YOUR LOCAL NEWSPAPERS, CONGRESSMEN, AND POST ONE ON OUR CHURCH BULLITEN BOARDS, WORK BULITEN BOARDS, & ETC. THANK YOU.(MAKE AS MANY COPYS AS YOU MIGHT NEED).

[Handwritten letter, partially legible:]

...Cotner v. Okla. National Guard, et al., 83-174-C filed 3-2?-83 in the Muskogee, Okla. fed Court, I just filed 81 documents as exhibits, this case could start a rash of hundreds other civil suits, if we don't keep it from getting out of hand now, so "IF" you are interested settling this case, (as well as another case I have against the Okla. Dept. of correction) WITHOUT cost to you or Okla., and gain several favors from political "power" as well, then I commend you consider ways I can be released from this state prison.

If you have not contacted me before 4-20-83, I will assume you are not interested. — ALSO, I can show you a simple, legal, way to "win" the "Okla. Battle" case, and get the federal courts out of the matter, altogether, but you will have to contact me before 4-20-83, — or I will ... closed.

Sincerely,
Robert E. Cotner
93780, Box 220
Stringtown, Okla.
74569

APR 0? 1983
ATTORNEY GENERAL