41 F.3d 1516
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Parker M. NIELSON, Appellant/Cross-Appellee,
v.
John P. SOLTIS, Reed M. Stringham, III, Dale Gurley, Timothy
H. Provan, R. Paul Van Dam, Division of Wildlife Resources,
State of Utah and the Attorney General, State of Utah,
Appellees/Cross-Appellants.
 Nos. 93-4088, 93-4098.
 United States Court of Appeals, Tenth Circuit.
 Oct. 20, 1994.
 
 1
 Before SEYMOUR and LOGAN, Circuit Judges, and DAUGHERTY, District Judge.*
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 DAUGHERTY, Senior District Judge.
 
 
 4
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 5
 This is an appeal from the United States District Court for the District of Utah granting summary judgment in favor of the Defendants and dismissing the Plaintiff's Complaint which alleged violations of federal civil rights laws, 42 U.S.C. Secs. 1983, 1985 and 1986, and related causes of action under Utah state law. The district court also denied the Defendants' Petition for Attorney's Fees[1] under 42 U.S.C. Sec. 1988. Plaintiff Nielson and Defendants Soltis, Stringham, Provan, Van Dam, Division of Wildlife Resources and the Attorney General, State of Utah, filed Cross-Appeals in this Court. For the reasons stated below, we affirm.
 
 I. BACKGROUND
 
 6
 Plaintiff-Appellant Parker Nielson trains hunting dogs as a hobby. On the opening day of Utah bird hunting season in 1990, September 9th, the Plaintiff was training his dogs with a type of game bird called a chukar. At that time, Appellee Dale Gurley, a Conservation Officer with the Division of Wildlife Resources of the State of Utah, was patrolling the Vernon-Bennion area of Tooele County, Utah, to check on hunters during the opening weekend. While Gurley was patrolling the area, he was informed by two hunters of a trap containing four game birds located nearby. Gurley proceeded to the trap following the hunters' directions and discovered the Appellant's bird trap containing one chukar, a game bird which the Appellant used in his dog training activities. Gurley determined that the trap was an illegal bird trap and seized the trap, releasing the chukar. At the time the trap was seized, Gurley did not know of the identity of the owner but was told later that day that the bird trap belonged to Appellant Parker Nielson.
 
 
 7
 On September 13, 1990, Appellant Nielson filed suit against Appellee Dale Gurley in the Third Judicial District Court for the County of Tooele, Utah. The Complaint in that case alleged that Gurley converted certain property of Nielson, tortiously interfered with contract rights between Nielson and the State of Utah and defamed Nielson. In that case, Appellant Nielson demanded $1,000 for damage to his property, $10,000 for interference with contract rights, and $50,000 for damages to his reputation.
 
 
 8
 On April 9, 1991, Appellant Nielson filed a Motion for Partial Summary Judgment in that state case. On or about April 18, 1991, Appellee/Cross Appellant Reed M. Stringham, III, an Assistant Attorney General who was representing Gurley in the state court action, met with Gurley to discuss Nielson's Motion for Partial Summary Judgment and to prepare an affidavit in opposition thereto. Appellee Gurley asserts that the affidavit was prepared by Stringham and others in the Attorney General's office and was thereafter signed by him. The affidavit stated in part that Gurley "issued a citation to Plaintiff on or about September 13, 1990, by mailing it to him." This portion of the affidavit is inaccurate because, while a citation had been filled out, it had not been filed or mailed to Nielson. The state court ultimately granted the Plaintiff's Motion for Partial Summary Judgment on June 24, 1991, holding that it is lawful under Utah law to own, possess and operate a bird pen for domestic game birds and that it is lawful under Utah law to recapture one's own domestic game birds.
 
 
 9
 On November 14, 1991, after partial summary judgment had been entered, Nielson filed a Motion to Strike the Affidavit of Dale Gurley or Require Compliance with Rules 7 and 11 (of the Utah Laws of Civil Procedure). On February 21, 1992, the Third Judicial District Court entered its Order striking the affidavit of Dale Gurley and awarding Rule 11 sanctions in favor of Nielson and against Gurley in the amount of $3,289, such award to compensate Nielson for the "fair and reasonable value of Plaintiff's professional time ..." On December 18, 1992, the Third Judicial District Court for Tooele County issued its memorandum decision in the state court action, resolving the damages aspect of that case. Nielson was awarded damages of $2,300 for destruction of his bird pen and attorney's fees of $15,000 in addition to the amount previously awarded as sanctions.
 
 
 10
 On or about April 29, 1992, while the state court action was still pending, Appellant Nielson filed the Complaint that is the subject of this action in the Third Judicial District Court for Salt Lake County, Utah. The Complaint alleged claims under 42 U.S.C. Secs. 1983, 1985 and 1986, and state common law claims. On June 1, 1992, the Defendants Soltis, Stringham, Van Dam and the Attorney General filed a Notice of Removal to the United States District Court for the District of Utah, Central Division. On June 3, 1992, the Defendants Gurley, Provan and the Division of Wildlife Resources joined in the removal of this case to federal court.[2] Also on June 3, 1992, all Defendants except Gurley filed an Answer to the Plaintiff's Complaint, in which they included the Eleventh Amendment to the United States Constitution and sovereign immunity as defenses on behalf of the State.
 
 
 11
 On June 5, 1992, Nielson then filed an Alternative Motion (1) For An Order Joining All Defendants In Notice of Removal Or (2) Remanding To The State Court. The Defendants opposed the Plaintiff's Motion asserting that removal was properly effected and opposed remand of the case. The Plaintiff's Alternative Motion was denied by the Court by Order dated July 15, 1992.
 
 
 12
 On or about July 31, 1992, Plaintiff Nielson filed his Motion for Summary Judgment in which he asserted that the conduct of all Defendants violated the civil rights laws, whether those Defendants were alleged to have engaged in affirmative misconduct or in failure to prevent such misconduct, and that the decision in the state court action granting partial summary judgment in favor of Plaintiff Nielson regarding the illegality of Defendant Gurley's conduct should be found dispositive of that issue in the second lawsuit under the doctrine of collateral estoppel. Defendants Soltis, Stringham, Provan, Van Dam, the Division of Wildlife Resources and the Attorney General filed their own Cross-Motion for Summary Judgment on or about August 31, 1992, asserting that they were entitled to judgment in their favor on the Plaintiff's claims under 42 U.S.C. Secs. 1983, 1985 and 1986, and urging dismissal of the Plaintiff's state claims. Defendant Gurley filed his own Motion for Summary Judgment on or about September 17, 1992. On December 16, 1992, the Court, after hearing oral arguments, denied Nielson's Motion for Summary Judgment, and granted the Motions for Summary Judgment of all Defendants. The Court dismissed the federal claims with prejudice and also dismissed the state claims without prejudice to their refiling in state court.
 
 
 13
 On December 30, 1992, all Defendants with the exception of Dale Gurley filed a Petition for Attorney's Fees under 42 U.S.C. Sec. 1988. Those Defendants asserted in their Petition that they were entitled to attorney's fees because the Plaintiff's claims were groundless, frivolous and unreasonable. The next day, Nielson filed the Plaintiff's Motion For An Order Vacating Memorandum Decision And Order Dated December 16, 1992, And Remanding To The State Court. That Motion was based primarily on the ground that the assertion of the Eleventh Amendment defense by the Defendants prevented removal of any claims for the reason that the federal court would lack jurisdiction over such claims. By Order dated April 14, 1993, the district court denied both Nielson's Motion to Vacate and Remand and the Defendants' Petition for Attorney's Fees. This appeal by Nielson and Cross-Appeal by the Defendants on the issue of the attorney's fee followed.
 
 II. ERRATA/MOTION TO STRIKE
 
 14
 On September 13, 1993, the Appellant Parker M. Nielson, filed in this Court a document entitled "Errata." In the Errata, Nielson asserts that the wildlife regulations (Exhibit D) cited by Gurley in his brief are a misrepresentation of the actual regulations. Nielson further contends in his Errata that Appellee Gurley and his counsel improperly omitted the portion of the Utah Administrative Code wildlife regulations regarding "accidental trapping."
 
 
 15
 On October 4, 1993, counsel for Appellee/Cross-Appellant Dale Gurley, Dennis C. Ferguson, submitted a response to Appellant's Errata. In that response, counsel for Appellee Gurley asserts that his Exhibit D is an exact copy of excerpts from a wildlife proclamation as set out in the minutes of the Utah Wildlife Board. Gurley and his counsel contend that there is no material difference between the provisions of the proclamation referenced in Gurley's brief and the wildlife regulations as published in the Utah Administrative Code. In support of that assertion, Appellee Gurley's counsel submitted a comparison of certain of the applicable regulations both as published in the Code and as stated in the proclamation attached as Exhibit D. As to the omission of the "accidental trapping" provisions, counsel for Gurley asserts that it is not his responsibility to cite provisions which he deems to be inapplicable to the case at bar.
 
 
 16
 On October 8, 1993, Appellant Nielson filed his Motion To Strike, For Sanctions Against Dennis C. Ferguson And The Firm Of Williams And Hunt And For Reference To Disciplinary Panel. In that document, Appellant Nielson requests that this Court strike Exhibit D to the Brief of Appellee Dale Gurley in its entirety, strike the response of Dale Gurley to the Appellant's Errata and requests that this Court impose sanctions against Dennis C. Ferguson and the firm of Williams and Hunt for the filing of the response to his Errata. Appellant Nielson further requests that his Motion to Strike be assigned to and entertained by a single judge pursuant to Rule 27 of the Federal Rules of Appellate Procedure and that his Motion for Sanctions be referred to the disciplinary panel for investigation and formal disciplinary proceedings pursuant to Section 6.2 of our Circuit Plan for Attorney Disciplinary Enforcement.
 
 
 17
 The Appellant asserts in his Motion to Strike that Appellee Gurley misrepresented the facts and law surrounding the seizure of the trap and, as discussed in connection with the Errata, misrepresented the wildlife regulations by attaching a proclamation rather than the actual Utah Code. Appellant Nielson contends that he advised counsel for Appellee Gurley by letter concerning the discrepancies between the proclamation attached to his Exhibit D and the Utah Code but that no correction of such Exhibit D has been made by counsel for Appellee Gurley. Appellant Nielson further contends that Gurley's response to the Appellant's Errata is unauthorized and should be stricken on that basis as well.
 
 
 18
 It should first be stated that this Court will deny Appellant Nielson's request that his Motion to Strike be assigned to and entertained by a single judge pursuant to Rule 27 of the Federal Rules of Appellate Procedure.
 
 
 19
 In consideration of the merits of Nielson's Motion to Strike, we are of the opinion that Exhibit D to the Brief of Appellee Dale Gurley should not be stricken in that such Exhibit clearly indicates that the document is a proclamation of the wildlife board and it is apparent from a reading of such document that it is an explanation of the applicable wildlife regulations as found in the Utah Code. An examination of the pertinent sections indicates that, as asserted by counsel for Appellee Gurley, the provisions of the Utah Code are identical in all material respects to those of the proclamation and such additions and changes contained in the proclamation are in no way misleading. In addition, this Court finds nothing improper in Gurley's failure to cite the "accidental trapping" provisions to this Court on the assertion that such provisions are deemed inapplicable to the positions taken by Gurley in this case.
 
 
 20
 We also decline to strike the response to the Errata filed by counsel for Appellee Gurley. This Court is of the opinion that the contents of Nielson's Errata are such that Appellee Gurley should be entitled to respond thereto. Such response is especially appropriate in light of the allegations of misconduct leveled against counsel for Appellee Gurley in the Errata.
 
 
 21
 In light of the foregoing, this Court will decline to strike the response to Plaintiff's Errata, will decline to impose sanctions against counsel for Appellee Gurley, and will therefore decline to refer this issue to the disciplinary panel under the Plan for Attorney Disciplinary Enforcement. The Motion To Strike, For Sanctions Against Dennis C. Ferguson And The Firm Of Williams And Hunt And For Reference To Disciplinary Panel is denied in its entirety.
 
 III. DISCUSSION
 
 22
 The first issue raised by Appellant Parker Nielson in this appeal is that the district court improperly exercised removal jurisdiction over the Defendants named in Nielson's Complaint. We review the question of whether the district court has subject matter jurisdiction de novo. FDIC v. Oaklawn Apts., 959 F.2d 170 (10th Cir.1992).
 
 
 23
 The Defendants in this case filed their Notices of Removal or joined in removal pursuant to 28 U.S.C. Secs. 1441 and 1446, and asserted that the district court had original jurisdiction of the case pursuant to 28 U.S.C. Secs. 1331 and 1343. Because 28 U.S.C. Sec. 1441(a) specifically provides that a Defendant may remove "any civil action brought in a state court of which the district courts of the United States have original jurisdiction," it is clear the Defendants were entitled to remove this case to federal court, as the Plaintiff alleged federal claims under Secs. 1983, 1985 and 1986 of the Civil Rights Act. The fact that the state courts were given concurrent jurisdiction does not change this result. Dorsey v. City of Detroit, 858 F.2d 338, 341 (6th Cir.1988). In addition, the removal was procedurally correct in that such removal was timely, and all Defendants joined in the removal. 28 U.S.C. Sec. 1446.
 
 
 24
 Despite technical compliance with the removal procedures, the federal court must remand to state court any cases or claims over which it lacks jurisdiction. 28 U.S.C. Sec. 1447(c);[3] First Nat. Bank of Salem v. Wright, 775 F.2d 245 (8th Cir.1985). There is no question that the district court properly exercised jurisdiction over the Appellant's claims against those Defendants sued in their individual capacities.[4] Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Hafer v. Melo, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); Henry v. Metropolitan Sewer District, 992 F.2d 332 (6th Cir.1990). As to the Plaintiff's claims against the state agencies and the heads of those agencies in their official capacities, the Supreme Court has consistently held that the Eleventh Amendment constitutes a bar which "neither pendent jurisdiction nor any other basis of jurisdiction may override." Pennhurst State School and Hosp. v. Halderman, 465 U.S. 89 at 121, 104 S.Ct. 900 at 919, 79 L.Ed.2d 67 (1984), citing Edelman v. Jordan, 415 U.S. 651, 91 S.Ct. 1347, 39 L.Ed.2d 662 (1974). As a result, the district court would be precluded from exercising jurisdiction over the Plaintiff's claims against the state defendants absent proper waiver of its Eleventh Amendment immunity by the State of Utah.
 
 
 25
 It is settled law that "[a] sovereign's immunity may be waived, and the Court consistently has held that a state may consent to suit against it in federal court." The Supreme Court has "insisted, however, that the state's consent be unequivocally expressed." Pennhurst, 465 U.S. at 99, 104 S.Ct. at 907. See, Edelman v. Jordan, 415 U.S. 61, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 105 S.Ct. 3142, 87 LEd.2d 171 (1985). While the record in this case is unclear as to whether the State of Utah waived its Eleventh Amendment immunity, we will assume for purposes of this appeal that such waiver was properly effected.
 
 
 26
 In any event, a review of the Plaintiff's Complaint in this case indicates that the only claims against the state agencies, and Van Dam and Provan in their official capacities as head of those agencies, are asserted pursuant to 42 U.S.C. Sec. 1986. As we indicate infra in connection with our discussion of the Plaintiff's claims under Secs. 1985 and 1986, the Plaintiff has abandoned those claims for purposes of this appeal and this Court need not further address Appellant Nielson's contentions in this regard.
 
 
 27
 The Appellant next contends that the district court erred in granting summary judgment in favor of the Defendants and contends that the undisputed facts in the case at bar clearly establish violations of Secs. 1983, 1985 and 1986. We review the grant or denial of summary judgment de novo. Barnson v. United States, 816 F.2d 549 (10th Cir.1987), cert. denied, 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987). We apply the same legal standard used by the district court under Rule 56(c) of the Federal Rules of Civil Procedure and examine the record to determine if any genuine issue of material fact was in dispute; if not, we determine if the substantive law was correctly applied. In applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Applied Genetics v. First Affiliated Securities, 912 F.2d 1238, 1241 (10th Cir.1990); Gray v. Phillips Petroleum Co., 858 F.2d 610 (10th Cir.1988).
 
 
 28
 Nielson first contends that the seizure and dismantling of the bird trap by Appellee Gurley was an actionable violation of Nielson's rights under 42 U.S.C. Sec. 1983.[5] This contention is based on an alleged illegal seizure of his bird trap under the Fourth Amendment to the United States Constitution. In this connection, Nielson asserts that the partial summary judgment order entered in the state court action established the improper seizure of the bird trap and thus the doctrine of collateral estoppel precludes further analysis of the search and seizure issue by the federal court. We disagree and find that the federal district court correctly held that the doctrine of collateral estoppel should not be applied in this case to bar review of the Appellant's Fourth Amendment claim.
 
 
 29
 It should first be noted that the Supreme Court has granted trial courts broad discretion in making the determination of when the doctrine of collateral estoppel should be applied. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1978). This Court has previously held that
 
 
 30
 [t]he doctrine of collateral estoppel precludes relitigation of issues actually and necessarily decided in a prior action ... It can only be applied to subsequent actions when (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. Matter of Lombard, 739 F.2d 499, 502 (10th Cir.1984).
 
 
 31
 See also, Peffer v. Bennett, 523 F.2d 1323 (10th Cir.1975).
 
 
 32
 The district court correctly declined to apply the doctrine of collateral estoppel as to the Defendants. The issues were not the same and there was no full and fair opportunity to litigate the alleged Sec. 1983 deprivation of the Fourth Amendment. Plaintiff has admitted that his first state court case was not based on the Fourth Amendment or a denial of access to the Courts.
 
 
 33
 It should be emphasized that the Plaintiff's original state court lawsuit against Defendant Gurley did not raise claims under 42 U.S.C. Secs. 1983, 1985 or 1986. In addition, an examination of the record in the state case indicates that the state court entered two orders after the hearing in this case on the Plaintiff's Motion for Partial Summary Judgment, which negates a final adjudication on the merits.[6]
 
 
 34
 As a result, we affirm the district court on the issue of collateral estoppel and turn now to the merits of the Court's determination that Defendant Gurley did not violate the Fourth Amendment in seizing Plaintiff Nielson's bird trap and that Plaintiff Nielson was not denied access to the Courts.
 
 
 35
 The district court found that the seizure of the bird trap by Officer Gurley, although performed without a warrant, was valid under the plain view doctrine. We agree.
 
 
 36
 "The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se, unreasonable under the Fourth Amendment--subject only to a few specifically established and well-delineated exceptions.' " Mincey v. Arizona, 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978), citing Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One of these exceptions is the "plain view" doctrine. This doctrine allows an officer to seize evidence without a warrant when (1) "the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed," (2) the object's incriminating character is immediately apparent, and (3) the officer has "a lawful right of access to the object itself." Horton v. California, 496 U.S. 128, 136, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990). See also, Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1991); Arizona v. Hicks, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987); Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983).
 
 
 37
 We find, as did the district court, that the facts of the case at bar fulfill the requirements for warrantless seizure enunciated in the plain view doctrine. It is undisputed that Defendant Gurley was a state game officer assigned to patrol the area of Tooele County in which the Plaintiff's bird trap was located. Gurley had both a right and an obligation to be in the area containing the Plaintiff's trap. It is also undisputed that the bird trap was in plain view. As to the incriminating character of the trap, the evidence is clear that the trap was unmarked as required by Utah law, which requires a permanent marking of such traps with the registered number of the trapper using them. Appellant Nielson argues on appeal that private wildlife farms are legal under Utah law and that Utah law permits the use of privately-owned game birds in dog training. We find, as did the district court, that this begs the question concerning the apparent illegality of the Plaintiff's trap. The district court determined: "[R]egardless of how plaintiff chooses to describe his pen, he cannot escape the fact that the pen's purpose was to attract and capture game birds. The pen looked like a trap, it functioned as a trap, and it functioned without any distinction between plaintiff's game birds and other wildlife." Memorandum Decision and Order at 14. The trap was required to be marked and it was not, and thus Officer Gurley was authorized by Utah law to seize such trap.[7] The Plaintiff's arguments on this issue are without merit.
 
 
 38
 Finally, we agree with the district court that, under the circumstances of the case at bar, it would not have been reasonably practicable for Defendant Gurley to obtain a warrant prior to the seizure of the bird trap. The bird trap was located in a remote area of Utah and could have been moved during the time it would have taken Gurley to obtain such a warrant.
 
 
 39
 Nielson argues on appeal that the seizure of his trap was inappropriate because its discovery was not unanticipated, as Officer Gurley had been notified of the presence of the trap by other hunters. Such contention was specifically rejected by the Supreme Court in the case of Horton v. California, 496 U.S. 128 (1990). In Horton, the Supreme Court held that while an inadvertent discovery of the evidence is a characteristic of most legitimate plain view seizures, it is not a "necessary condition" to the validity of such seizures. Horton, 496 U.S. at 130. The decision of the district court on this issue should be affirmed.
 
 
 40
 In regard to the Plaintiff's allegations concerning the seizure of the bird trap, the district court next found that the Plaintiff could not successfully maintain a Sec. 1983 action for deprivation of procedural due process for the reason that the Plaintiff received an adequate post-deprivation remedy for the seizure and destruction of his bird trap under Utah law through the state court lawsuit. As has been stated, the Plaintiff was compensated in that state court case both for the value of his trap and for his time in prosecuting his lawsuit. The district court held that under the Supreme Court case of Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), such state remedy was sufficient to satisfy the requirements of due process. In addition, the Court found that Gurley did not engage in deliberate misconduct so as to implicate the due process clause of the Fourteenth Amendment. Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 664, 88 L.Ed.2d 662 (1986). We agree, both for the reason that Nielson was adequately compensated in state court and because, as stated above, we are of the opinion that Gurley did not engage in misconduct concerning the seizure of the bird trap. At most, Gurley's conduct could only be considered as mere negligence, which clearly does not constitute a deprivation in the constitutional sense. Daniels, 474 U.S. at 330-336; Harris By and Through Harris v. Maynard, 843 F.2d 414, 415 (10th Cir.1988). The Appellant's position on this issue is without merit and the district court should be affirmed.
 
 
 41
 We next address Nielson's claims under Sec. 1983 against Defendants Gurley, Soltis and Stringham alleging interference with access to the Courts. Nielson claims that such interference resulted from the false statements in the Gurley affidavit prepared with the help of Soltis and Stringham. The district court held the Plaintiff's complaint on this issue to be without merit. We agree and affirm.
 
 
 42
 While "access to the courts of the United States is a guaranteed constitutional right," Shaw v. Neese, 727 F.2d 947, 949 (10th Cir.1984), we agree with the district court that there is no merit in the Plaintiff's claim herein of impairment of access to the courts. The Plaintiff's state court action was completely successful. The Plaintiff received damages as sanctions in regard to the false affidavit, compensatory damages for the loss of his bird trap and an additional amount as attorneys fees in prosecuting his state case. The Plaintiff simply cannot claim that any actions of any of the Defendants prevented him from obtaining redress in the state court or even impeded the progress of that case. The judgment of the district court should be affirmed on this issue.
 
 
 43
 In addition to his claims under Sec. 1983, Nielson brought claims under 42 U.S.C. Secs. 1985 and 1986 against all Defendants, including two state agencies and the Attorney General and the head of the Division of Wildlife Resources in their official capacities. In this appeal, Appellant Nielson does not address his Secs. 1985 or 1986 claims, except to say that such claims are somehow "derivative" to the Sec. 1983 claims, and states in his Answering Brief that he "has elected to pitch his appeal on jurisdiction and the Sec. 1983 problem ..." Answering Brief at 42. In light of Nielson's abandonment of the Secs. 1985 and 1986 claims, this Court need not address the parties' contentions in this regard. Rule 28, Federal Rules of Appellate Procedure; Associated Gen. Contractors of California v. San Francisco Unified School Dist., 616 F.2d 1381 (9th Cir.1980), cert. denied, 449 U.S. 1061, 101 S.Ct. 783, 66 L.Ed.2d 603 (1980). We do state, however, that the district court was clearly correct in finding no "racial, or perhaps otherwise class-based, invidiously discriminatory animus" as the focus of the alleged conspiracy, as dog trainers are not a protected class for purposes of the Civil Rights laws. Kush v. Rutledge, 460 U.S. 719, 726, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983).
 
 
 44
 This Court will note at this point that not only do we find that the Plaintiff's claims state no violation of 42 U.S.C. Sec. 1983, we have serious concern as to whether the alleged violations claimed by the Plaintiff constitute "the kind of deprivation of property to which the Fourteenth Amendment is addressed." Parratt v. Taylor, 451 U.S. at 544 (Stewart, J., concurring).
 
 
 45
 The proliferation of litigation resulting from the expanded use of Sec. 1983 is apparent to anyone familiar with the reported decisions of the Courts of the United States. The existence of the Sec. 1983 remedy does not require that federal courts entertain all suits in which unconstitutional deprivations are asserted. A federal constitutional question must exist 'not only in mere form, but in substance, and not in mere assertion, but in essence and effect.'
 
 
 46
 Wells v. Ward, 470 F.2d 1185, 1189 (10th Cir.1972), citing Cuyahoga River Power Co. v. Northern Ohio Traction & Light Co., 252 U.S. 388, 397, 40 S.Ct. 404, 408, 64 L.Ed.2d 626 (1920).
 
 
 47
 We entertain serious doubts as to whether the Plaintiff's alleged claims rise to this level of significance. The loss suffered by the Plaintiff "seems not only to trivialize, but grossly to distort the meaning and intent of the constitution." Parratt, 451 U.S. at 545 (Stewart, J., concurring).
 
 
 48
 Appellant Nielson next contends that the district court erred in dismissing his state law claims without prejudice to their refiling in state court rather than remanding the claims to that state court, and asserts that such a remand is required by 28 U.S.C. Sec. 1367[8] and the relevant case law.
 
 
 49
 We review the district court's decision to dismiss the supplemental state claims under the abuse of discretion standard, King Fisher Marine Service, Inc. v. 21st Phoenix Corp., 893 F.2d 1155 (10th Cir.1990), cert. denied, Langan Engineering Associates, Inc. v. 21st Phoenix Corp., 110 S.Ct. 2603 (1990), and find that the district court did not abuse its discretion in dismissing Appellant Nielson's supplemental state claims without prejudice to refiling in state court.
 
 
 50
 The Appellant principally relies upon the case of Carnegie-Mellon University v. Cohill, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), in support of his proposition that his supplemental state claims should have been remanded rather than dismissed. We find that the holding of the Supreme Court in the Carnegie-Mellon case does not dictate this result. In that case, the Supreme Court acknowledged that the district court has "undoubted discretion" to dismiss a removed case involving supplemental state claims. Carnegie-Mellon, 484 U.S. at 356. The only question presented in the Carnegie-Mellon case was "whether the district court may decline jurisdiction through a remand as well as through dismissal." Carnegie-Mellon, 484 U.S. at 356. The Supreme Court held that remand is permissible, but not required, in situations not specifically authorized in the removal statutes.
 
 
 51
 In so holding, the district court again approved the factors enunciated in the leading case of United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed. 218 (1966), and reasserted that those considerations of "economy, convenience, fairness and comity" should be used in determining whether remand or dismissal of supplemental state claims is more appropriate. Carnegie-Mellon, 484 U.S. at 351. As a result, the district court, in its discretion, may exercise one of three options over the supplemental state law claims: exercise jurisdiction over those claims, remand the claims to state court, or dismiss the supplemental state claims. A Court's decision regarding which option to exercise should be made by evaluating the case in light of the Gibbs factors.
 
 
 52
 In the case at bar, the district court relied on the United Mine Workers v. Gibbs case in finding the appropriate course of action to be dismissal without prejudice of the state claims. The Court stated that such dismissal would not prevent the Plaintiff from filing the supplemental state claims in state court within the time period established by the applicable statutes of limitations, for the reason that Utah Code Ann. Sec. 78-12-40 provides a plaintiff a one-year grace period in which to refile claims which are dismissed without prejudice if the limitations period would have otherwise barred the claims. We believe the district court properly considered the Gibbs factors in reaching this determination, and that the Court did not abuse its discretion in dismissing the supplemental state claims without prejudice upon the resolution of the federal claims on which the Court's jurisdiction was based.
 
 
 53
 The final issue presented is the Defendants' request for attorneys fees. The Court denied the Defendants' application for fees, stating that "while some of Plaintiff's claims were weak, and arguably unreasonable, they did not dip to the level of 'frivolous, unreasonable or without foundation.' " Memorandum Decision and Order at 6. Our review of the trial court's denial of fees is limited to determining whether the Court abused its discretion. Crabtree, By and Through Crabtree v. Muchmore, 904 F.2d 1475, 1478 (10th Cir.1990); Adamson v. Bowen, 855 F.2d 668, 673 (10th Cir.1988). We find no abuse of discretion and affirm.
 
 
 54
 The Supreme Court has stated that stringent standards must be met before a Court may award attorneys fees to a prevailing defendant pursuant to 42 U.S.C. Sec. 1988. The Court has stated that attorneys fees may be awarded "upon a finding that the plaintiff's action was frivolous, unreasonable or without foundation, even though not brought in subjective bad faith." Christianburg Garment Co. v. EEOC, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). In that case, the Court went on to state that "it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation ..." Christianburg Garment Co. v. EEOC, 434 U.S. at 422, 98 S.Ct. at 701, 54 L.Ed.2d 648 (1978). When such standards are applied to the case at bar, this Court finds that the district court was within its discretion to deny the Defendants attorneys fees in light of the claims raised by the Plaintiff.
 
 
 55
 The judgment of the district court is affirmed.
 
 
 
 *
 The Honorable Fred Daugherty, Senior United States District Judge for the Western, Eastern and Northern Districts of Oklahoma, sitting by designation
 
 
 **
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [1]
 The Petition for Attorney's Fees was filed by all Defendants except Dale Gurley
 
 
 [2]
 At the time of the filing of the Plaintiff's Complaint, John P. Soltis and Reed M. Stringham, III, were Assistant Attorneys General for the State of Utah, R. Paul Van Dam was the Attorney General for the State of Utah, and Timothy H. Provan was the Director of the Division of Wildlife Resources and the superior to Dale Gurley
 
 
 [3]
 Section 1447(c) provides, in pertinent part: "If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of costs."
 
 
 [4]
 The only Defendants named in their official capacity in Nielson's Complaint filed in the Third Judicial District Court of Salt Lake County are Defendants Van Dam, the Attorney General of the State of Utah, and Timothy H. Provan, the Director of the Division of Wildlife Resources. The Division of Wildlife Resources and the Attorney General of the State of Utah are separately named as Defendants. It should be noted that Defendants Van Dam and Provan were also sued in their individual capacities
 
 
 [5]
 42 U.S.C. Sec. 1983 provides in pertinent part that:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 Because the Defendants in this case have conceded that any actions taken by them were taken under color of state law, the question presented to this Court is whether that alleged conduct deprived Nielson of protected rights, privileges or immunities.
 
 
 [6]
 The transcript of the hearing on the Cross-Motions for Summary Judgment before the federal district court indicates that Nielson acknowledged that he "did not prevail on a theory of unlawful search."
 
 
 [7]
 Sec. 23-20-2(2) of the Utah Code provides in pertinent part that "materials and devices used for the unlawful taking or possessing of protected wildlife shall be seized ..."
 
 
 [8]
 28 U.S.C. Sec. 1367 is a codification under the name of "Supplemental Jurisdiction" of the case law doctrines of "pendent" and "ancillary" jurisdiction. That section reads in pertinent part as follows:
 Sec. 1367 Supplemental Jurisdiction
 (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district court shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.
 ...
 (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
 (1) the claim raises a novel or complex issue of state law,
 (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
 (3) the district court has dismissed all claims over which it has original jurisdiction, or
 (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.